### NATIONAL BANK v. COLBY.

1. The property of a National bank organized under the act of Congress of June 3d, 1864, attached at the suit of an individual creditor, after the bank has become insolvent, cannot be subjected to sale for the payment of his demand, against the claim for the property by a receiver of the bank subsequently appointed.

2. A suit against a National bank to enforce the collection of a demand is abated by a decree of a District Court of the United States dissolving the corporation and forfeiting its rights and franchises, rendered upon an information against the bank filed by the Comptroller of the Currency.

ERROR to the Supreme Court of Alabama; the case being thus:

On the 15th of April, 1867, a treasury draft of the United States was presented to the First National Bank of Selma,

a bank organized under the act of Congress of June 3d, 1864, entitled "An act to provide a National currency secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof,"* the act commonly known as the National Banking Act. Payment of the draft was refused. On the morning of the following day, the 16th, the bank did not open for business; and during that day possession was taken of the bank—meaning, of course, by this term its place of business, its property, effects, books, and papers—by the military authorities of the United States under instructions from the Secretary of the Treasury. On the 17th its president absconded. An examination had that day into its affairs showed a deficiency in its cash account of $200,000, and on the 30th of April, a receiver of its effects was appointed by the Comptroller of the Currency. Subsequently, that is to say on the 28th of May, an information was filed by the comptroller charging violation of its charter, and a summons issued to the directors to appear; the day of appearance (by a clerical error apparently) being put as "the 13th day of this instant." On the 1st of June a decree was entered on non-appearance, *pro confesso*, in the District Court of the United States forfeiting all the rights, franchises, and privileges of the bank, and adjudging its dissolution.

Whilst the bank was in possession of the military authorities, namely, on the 17th of April, 1867, one Colby sued out an attachment in one of the State courts of Alabama, against it upon an affidavit alleging that it was indebted to him in the sum of $4800, and that it had moneys, property, or effects liable to satisfy its debts which it fraudulently withheld. The attachment was levied the same day on its real property, consisting of a dwelling-house and grist-mill. On the 22d of May following, a declaration was filed in the case, in which the plaintiff alleged an indebtedness of the bank to him in the amount stated on three certificates of deposit.

---

* 13 Stat. at Large, 99.

Nearly two years afterwards, in March, 1869, the attachment suit came on for trial. The receiver was then allowed, without objection, to appear by counsel and make proof of the facts above stated and produce his appointment as receiver, and the decree dissolving the bank and forfeiting its rights, privileges, and franchises. And thereupon he moved the court to dissolve the attachment and discharge the levy, and that the suit abate. This motion was overruled. The receiver then offered, without objection, the same evidence to the jury, and requested the court to instruct them, among other things, that if they believed the evidence, the suit could not be maintained by the plaintiff, and that they must find for the defendant.

No objection was taken to the accidental error as to return day.

The court refused the instruction asked for, and the jury gave a verdict for the plaintiff for the full amount claimed. Judgment being rendered accordingly, the case was taken to the Supreme Court of the State. That court said:

"The act of insolvency does not dissolve the liability to be sued, nor the liability to be sued by attachment. The act of Congress does not so declare, nor is it necessary for the purposes of that statute so to infer it. By the practice of our courts, attachments are only abatable when they have been issued without affidavit or without bond, as required by law. These being the only causes enumerated, others are excluded by their omission. And matter of abatement cannot be given in evidence on an issue upon the merits, a default or a failure to plead."

The Supreme Court accordingly affirmed the judgment of the inferior State court, and the case was now here for review under section 709 of the Revised Statutes, the modern substitute of the second section of the act of February 5th, 1867, repealing and replacing the old twenty-fifth section of the Judiciary Act.

*Mr. Alexander White, in support of the judgment below,* enlarged upon and enforced the positions taken in the opinion of the court below; he contended also that the attachments having

been in form regular, the receiver had no right to appear in the way that he had done in the State court, and move the discharge of the attachment and the abatement of the suit, or to conduct the case at the trial. He adverted moreover to the fact that the summons called on the directors to be in court on the 13th of May, 1867, and that the decree of dissolution of the bank was entered upon non-appearance *pro confesso,* on the 1st of June.

*Messrs. P. Phillips and C. Case, contra.*

Mr. Justice FIELD delivered the opinion of the court.

Two questions are presented in this case for our determination : 1st, whether the property of a National bank organized under the act of Congress of June 3d, 1864,* attached at the suit of an individual creditor, after the bank has become insolvent, can be subjected to sale for the payment of his demand, against the claim for the property by a receiver of the bank subsequently appointed; and 2d, whether a suit against a National bank to enforce the collection of a demand is abated by a decree dissolving the corporation and forfeiting its rights and franchises.

To the first question the act of Congress furnishes an answer in the negative; to the second, the general law respecting corporations gives one in the affirmative.

The act of Congress prescribes the conditions upon which National banks shall be created; the powers they shall possess; and the consequences of their failure to meet their obligations. All persons dealing with these institutions can only acquire and enforce rights against them under the limitations there designated.

The object of the act, as its title imports, was to create a National currency secured by a pledge of the bonds of the United States. And to that end it requires security in government bonds for all notes issued; and in case any bank fails to redeem its notes on demand, it provides for their payment on presentation at the treasury of the United States.

* 13 Stat. at Large, 99.

To make good any deficiency which may exist in the proceeds of the bonds to meet the amount expended in paying the notes of a bank, the act declares that "the United States shall have a first and paramount lien upon all the assets" of the association. Whatever disposition, therefore, may be made of the property of an insolvent bank, the lien of the United States thereon must exist until the government is fully reimbursed.

As to the general creditors, the act evidently intends to secure equality among them in the division of the proceeds of the property of the bank. The fiftieth section provides for the appointment of a receiver of an insolvent bank, who shall take possession of its assets, collect its debts, and upon the order of a court of record, sell its real and personal property and pay over the money to the treasury of the United States, subject to the order of the Comptroller of the Currency; that the comptroller shall then advertise for creditors to present their claims against the association, and after making provision for refunding to the United States any deficiency in redeeming its notes, shall make a ratable dividend of the money on all claims proved to his satisfaction or adjudicated in a court of competent jurisdiction.

The fifty-second section, further to secure this equality, declares that all transfers by an insolvent bank of its property of every kind, and all payments of money made after the commission of an act of insolvency, or in contemplation thereof, with a view to prevent the application of its assets in the manner prescribed by the act, or "with the view to the preference of one creditor over another, except in the payment of its circulating notes, shall be utterly null and void."

There is in these provisions a clear manifestation of a design on the part of Congress: 1st, to secure the government for the payment of the notes, not only by requiring in advance of their issue a deposit of bonds of the United States, but by giving to the government a first lien for any deficiency that may arise on all the assets subsequently acquired by the insolvent bank; and, 2d, to secure the assets of the bank for ratable distribution among its general creditors.

This design would be defeated if a preference in the application of the assets could be obtained by adversary proceedings. The priority of the United States and the ratable distribution among the general creditors, so studiously provided for in the act, would in that case be lost. As justly observed by counsel, if preference was left to the race of diligence, creditors living remote from the location of the bank would always be distanced in the contest, and the equality promised to them by the act would be a mere mockery.

It is too late for counsel to question in this court the right of the receiver to appear in the State court and move the discharge of the attachment and the abatement of the suit, or to contest the case at the trial. Whatever informality may have existed in the proceeding, it was waived by the silence of the parties. Objections in matters of form to modes of procedure in the court below cannot be urged here for the first time.

But, independently of this consideration, we are of opinion that it was a proper proceeding on the part of the receiver to apply to the court below to discharge the attachment, on proof of the facts presented by him, and the production of his appointment and the decree dissolving the association. Invested with the rights of the bank to the possession of the property by his appointment, it was his duty to take the necessary steps to remove the levy. That levy was void as against his claim to the property; and, in our judgment, it was error for the court to refuse to discharge it on his application.

But, in addition to this, the suit had abated by the decree of the District Court of the United States forfeiting the rights, privileges, and franchises of the corporation, and adjudging its dissolution. The act of Congress provides for such forfeiture whenever the directors themselves violate, or knowingly permit any officers, servants, or agents of the association to violate any of the provisions of the act. The information filed against the bank by the Comptroller of the Currency disclosed several gross violations of the act by the

directors; and the justice and validity of the decree were not questioned in the State court. With the forfeiture of its rights, privileges, and franchises the corporation was necessarily dissolved, as the decree adjudged. Its existence as a legal entity was thereupon ended; it was then a defunct institution, and judgment could no more be rendered against it in a suit previously commenced than judgment could be rendered against a dead man dying *pendente lite.* This is the rule with respect to all corporations whose chartered existence has come to an end, either by lapse of time or decree of forfeiture, unless, by statute, pending suits be allowed to proceed to judgment notwithstanding such dissolution. The prolongation of the corporate life for this specific purpose as much requires special legislative enactment as does the original creation of the corporation. No such enactment is found in the act of Congress authorizing the creation of National banks and prescribing their powers, nor is there any provision elsewhere that we are aware of which would prevent the dissolution of a corporation from working the abatement of a suit pending against it at the time.

"I cannot distinguish," says Story, in *Greeley* v. *Smith,*[*] "between the case of a corporation and the case of a private person dying *pendente lite.* In the latter case the suit is abated at law, unless it is capable of being revived by the enactment of some statute, as is the case as to suits pending in the courts of the United States, when, if the right of action survives, the personal representative of the deceased party may appear and prosecute or defend the suit. No such provision exists as to corporations, nor, indeed, could exist without reviving the corporation *pro hac vice*, and, therefore, any suit pending against it at its death abates by mere operation of law."

Some criticism is made upon the fact that the decree of dissolution was entered on the 1st of June, when the summons cited the directors before the court on a different day.

---

[*] 3 Story, 658; see also Farmers' and Mechanics' Bank *v.* Settle, 8 Watts & Sargeant, 207, and Mumma *v.* The Potomac Company, 8 Peters, 281.

It is a sufficient answer to this criticism that no objection of the kind was made to the decree in the court below, nor was its validity questioned. The presumption is, in the absence of such objection, that an answer existed which would have been made had the objection been taken. The decree was admitted in evidence, and the decision of the court was placed on the ground that the provisions of the act of Congress did not interfere with proceedings by attachment, in the State court, nor affect the liability of an insolvent corporation to be thus sued, and "that matter of abatement could not be given in evidence on an issue upon the merits, a default, or a failure to plead;" the court apparently considering the abatement of the attachment, and not the abatement of the suit, as the object sought by the production of the decree.

JUDGMENT REVERSED, AND THE CAUSE REMANDED, with directions to discharge the attachment levied on the property of the bank.