## PRICE, Receiver, *v.* COLEMAN and others.

*(Circuit Court, D. Massachusetts.   January 6, 1885.)*

EQUITY PRACTICE—DOCKET FEE—HEARING ON DEMURRER.
    A hearing on demurrer is a final hearing, and a docket fee of $20 may be taxed.   Rev. St. § 824.

In Equity.   Appeal from the clerk's taxation of costs in favor of George N. March, one of the defendants.

*A. A. Ranney,* for Price, receiver.

*Jesse M. Wheeler,* for defendants.

*(Circuit Court, D. Massachusetts.   January 6, 1885.)*   ·

NATIONAL BANKS — REV. ST. § 5242—INSOLVENCY — TRANSFER OF PROPERTY TO INDEMNIFY SURETIES.
    The Pacific National Bank, of Boston, suspended November 18, 1881, but after examination resumed March 18, 1882, with the consent of the comptroller of the currency, and continued to transact business until May 22, 1882, when it again failed.   Between March 24, 1882, and April 28, 1882, certain creditors, whose claims had been disputed and placed in a suspense account, attached the property of the bank, whereupon the bank gave bond with the president and

a director as sureties, and the attachments were **dissolved.** The bank transferred to the sureties, March 22, 1882, a certificate of deposit for $100,000 on another bank, which, on April 13, 1882, was exchanged for other property. *Held,* that such transfer was not made after the commission of an act of insolvency by the bank, or in contemplation thereof, and with a view to a preference or to prevent the application of the assets as prescribed by the banking act.

In Equity.

*A. A. Ranney,* for complainant.

*J. D. Ball, R. Stone, A. D. Foster, E. W. Hutchins,* and *Henry Wheeler,* for defendants.

COLT, J. This bill in equity is brought by the receiver of the Pacific National Bank, of Boston, against Lewis Coleman and John Shepherd, sureties on certain bonds of the bank, given to dissolve attachments, and against the creditors of the bank who made the attachments, praying that the property transferred by the bank to the sureties to indemnify them be given up, the bonds declared void, the attaching creditors enjoined from enforcing the bonds, and from prosecuting their suits against the bank. The bank suspended November 18, 1881, and was put in charge of Mr. Needham, bank-examiner. On March 18, 1882, it resumed business with the consent of the comptroller of the currency. At the time of its failure, the paid-up capital of the bank was $961,300. An assessment of 100 per cent. was voted in January, 1882, of which $643,700 was paid in before the bank reopened. At the date of reopening, its condition was as follows:

| | | |
|---|---|---:|
| Assets, | | $5,829,904 69 |
| Liabilities, except capital stock and assessments, | | 4,868,604 69 |
| Surplus, | | $961,300 00 |

The evidence shows that after the failure of the bank, there was a thorough and exhaustive examination of its condition, extending over a period of several months; and that, on March 18, 1882, when it reopened, the directors, examiner, and comptroller believed it to be solvent. From this time until May 20, 1882, the bank went on conducting its business in the ordinary way, receiving deposits to an amount exceeding two millions of dollars, and paying on presentation all undisputed claims. A large amount of paper, about half a million, coming due May 20, 1882, and which was not paid as expected, the bank was again forced to suspend, and on May 22, 1882, the present receiver was appointed. At the time the bank reopened, there were certain disputed claims which it refused to recognize. These were placed, with the approval of the comptroller, in a suspense account. Among these were those of the defendants Mixter, Whitney, Demmon, and Prescott. Finding their claims were contested, these defendants, between March 24, 1882, and April 28, 1882, brought suits against the bank, and attached its property. These attachments were dissolved by giving bonds. The sureties on these

bonds were the defendants Coleman and Shepard. Mr. Coleman was president of the bank, and Mr. Shepard a director. For their protection, as sureties on bonds given to dissolve attachments, the bank transferred to them, on March 22, 1882, a certificate of deposit for $100,000 on the Maverick National Bank, which was subsequently, on April 13, 1882, exchanged for other security.

The receiver contends that the transfer by the bank of its property to indemnify the sureties, and the attachments made by the defendant creditors, were void under the provisions of the national banking act. Section 5242, Rev. St., makes null and void any transfer of property by a national bank, made after the commission of an act of insolvency, or in contemplation thereof, and with a view to the preference of one creditor to another, or with a view to prevent the application of the assets of the bank as provided by law, except in payment of its circulatiug notes.

The first inquiry is, was the transfer by the bank to the sureties void under this section? Was it made after the commission of an act of insolvency by the bank, or in contemplation thereof, and with a view to a preference, or to prevent the application of the assets, as prescribed by the banking act? The bank had just resumed after a searching examination. The government officials charged with the duty of investigating its affairs pronounced it solvent. It was conducting its business in the ordinary way and paying all undisputed claims on presentation. It appeared able to meet all demands in the regular course of business. To hold this transfer void under these circumstances would seem to establish the principle that after the comptroller, examiner, and directors, upon a thorough investigation, have found a bank solvent, it is still to be deemed insolvent, and its payments and transfers to be held void, because it happens that assets considered good, turn out to be bad. Again, if this transfer is invalid, it is difficult to see why all payments made by the bank, from the day it resumed down to the time it finally closed its doors, are not equally so. Our conclusion is that the transfer by the bank was not made after an act of insolvency, or in contemplation thereof. Nor was it made with a view of giving a preference, or of preventing the distribution of the assets, as provided by law. The very object of the action taken by the bank was to resist the payment of what it considered illegal claims. Its purpose was not to prefer these creditors to others, but to prevent them, if possible, from recovering any part of their demands.

The next question is, were the attachments by the defendant creditors void under the law? The receiver here relies mainly on the case of *National Bank* v. *Colby*, 21 Wall. 609. In that case the attachment was made after the bank had closed, and was in possession of the military authorities of the United States. The supreme court held that the property of a national bank, attached at the suit of an individual creditor *after the bank has become insolvent*, cannot be subjected

to sale for the payment of his demands, against the claim for the property by a receiver of the bank subsequently appointed. The court go on to say, after referring to the various provisions of the banking act, that it was the manifest design of congress, *first*, to protect the government against loss, and, *second*, to secure the assets of the bank for ratable distribution among its general creditors. This decision clearly refers to attachments upon the property of insolvent banks,—banks which have committed acts of insolvency, or are in contemplation of insolvency, which is the language used in section 5242.

For the reasons already given, we do not think the Pacific Bank, at the time these attachments were made, was insolvent within the meaning of *National Bank* v. *Colby.* There the bank had closed its doors, and had committed acts of insolvency. At the time these attachments were made, there was nothing to indicate the insolvency of the bank, or that it contemplated becoming insolvent. That case, therefore, is not applicable here. In view of the conclusions we have reached, it becomes unnecessary to consider the question whether the bonds given to dissolve the attachments stand upon a different footing from the attachments themselves. The bill should be dismissed; and it is so ordered.