W. M. GILES, RECEIVER, ET AL., v. A. R. STANTON.

No. 112.

### 1. Jurisdiction.

In a railway receivership sale of the property was ordered on intervention of the bondholders. At the time, it appeared that funds were in hands of the receiver. The court in its order of sale reserved jurisdiction for the purpose of adjusting the rights of the parties having claims to the fund. This the court could do, and it could administer the fund ................................... ................ ....... 625·

### 2. Appeal as Affecting a Judgment Dissolving a Corporation.

Pending an appeal from a judgment forfeiting the charter of a corporation, the corporation has an existence, and a judgment against it, pending such appeal, for damages is not void........................ 626·

### 3. Rights of Bondholders—Mortgagees—Lien Holders, etc.

Railway bonds were secured by deed of trust. The trustee, upon the failure to pay interest by the railway company, was authorized to take possession of the road, or to institute foreclosure proceedings. The State by proceedings for that purpose forfeited the charter, and the property was in hands of a receiver for the benefit of the parties interested. The trustee intervened, asking foreclosure. Contention arose touching priority of right to the funds in hands of the receiver ...... 623·

*Held:* 1. The mortgagees had no lien upon the earnings of the road while it remained in the hands of the receiver; and until the trustee by the intervention for foreclosure no lien attached to the earnings .. 627·

2. The right to appropriate the earnings by suit, etc., constituted a part of the obligation of the contract evidenced by the mortgage..... 627·

3. In so far as the Legislature (Laws of Twenty-first Legislature, chapter 59, section 6) endeavored to give preference in the earnings to a claim which before the enactment of the law had no lien on such earnings, the law violated the obligation of the contract and was void. 628·

4. As to accumulated earnings in hands of receiver at time of the intervention, the holders of claims of the sixth class as rated in chapter 59, section 6, Laws of Twenty-first Legislature (judgments upon claims before the appointment), would have preference over the mortgagees ...................................................... 628·

5. While the intervention fixed the right of the mortgagees to the future earnings to come into hands of the receiver, this was not an absolute right, but subject to all claims against the receiver embraced in the first five classes named in said act ............................... 628·

6. To the extent of the earnings the court could administer them, according to priority of right...................................... 629·

7. The corpus of the property could not be invaded for the payment of claims of the sixth class, which had no lien upon the earnings save as by said act...................................................... 629·

8. A deposit fixed by order of sale to be made at the sale forms part of the purchase money, and as the corpus, can not be applied to claims of said sixth class............................................... 629

ERROR to Court of Civil Appeals for Third District, in an appeal from Travis County.

*Fisher & Townes*, for trustee.

*John T. Craddock*, for Giles, the receiver.—1. Prior to the receivership, at all times since then, and now, the intervenor, Stanton, was and is a general unsecured creditor of the East Line & Red River Railway Company; and his claim, resting solely on a tort committed by the company before the forfeiture of its charter and nearly two years before the appointment of a receiver, is entitled to no lien or charge upon or against the income arising from the operation of the road by the receiver, and to none upon or against the corpus of the estate.    Trust Co. v. Railway, 46 Am. and Eng. Ry. Cases, 296; Easton v. Railway, 38 Fed. Rep., 12; Trust Co. v. Railway, 30 Fed. Rep., 895, 897; Davenport v. Receivers, 2 Woods, 519; Trust Co. v. Railway, 28 Fed. Rep., 871; Hiles v. Receiver, 14 Fed. Rep., 141; Ryan v. Hays, 62 Texas, 42; Railway v. Johnson, 76 Texas, 431; Railway v. Comstock, 83 Texas, 539; Boggs v. Brown, 82 Texas, 41; Fosdick v. Schall, 99 U. S., 235, 252; Huidekoper v. Locomotive Works, 99 U. S., 258, 269; Burnham v. Bowen, 111 U. S., 776, 778; Miltenberger v. Railway, 106 U. S., 287; Trust Co. v. Railway, 117 U. S., 432; Railway v. Humphreys, 145 U. S., 103; 20 Am. and Eng. Encycl. of Law, 407, 411, 412, 417, 418, 419, 420, 421, 422, 425, 426, et seq.

2. Among creditors of a railway corporation who, prior to foreclosure proceedings and the appointment of a receiver, are without specific lien or security, those only are entitled to priority over the mortgage creditors who hold debts incurred by the railway company for a few specific purposes, namely, wages, material, supplies, equipment, and balances due connecting lines.    In other words, the priority of " back debts " is limited to operating expense, equipment, and material entering into the permanent improvement of the property, and only such " back debts " as were contracted within a reasonable time previous to the appointment of a receiver, generally six months, will be allowed priority; but claims for damages to persons or property, though accruing within the requisite limit of time prior to the appointment of a receiver, are not entitled to priority as operating expenses, and surely claims for such damages occurring long prior to the appointment of a receiver, as in this case, can have accorded to them no preference over the mortgage debt.    Ryan v. Hays, 62 Texas, 42, 50, 51; Railway v. Johnson, 76 Texas, 431; Railway v. Comstock, 83 Texas, 539; Boggs v. Brown, 82 Texas, 41; Fosdick v. Schall, 99 U. S., 252, 253; 99 U. S., 258, 259; Burnham v. Bowen, 111 U. S., 776, 783; Miltenberger v. Railway, 106 U. S., 287; 137 U. S., 197; Trust Company v. Railway, 117 U. S., 434; Railway v. Humphreys, 145 U. S., 103; 9 Am. and Eng. Ry. Cases, note p. 718; 17 Ib., 313; Turner v. Railway, 8 Bissell, 315; Thomas v. Railway, 36 Am. and Eng. Ry. Cases, 318; 20 Am. and Eng. Encycl. of Law, 407, 417, et seq.

*Robert G. West,* for appellee.—1. The mortgage under which appellants claim, as a matter of law, can not hold the fund accumulated and on hand when appellants intervened.

2. Appellee had an equitable lien on said fund when he intervened, arising out of the fact that he was prevented from having an execution on his judgment by the death of the corporation prior to the expiration of the twenty days after judgment, as provided by law in reference to the issuance of execution, and because of the writ of error sued out and abandoned by the defunct company.

3. The judgment of October 28, 1891, can not avail appellants as a basis of a prior right to the fund, because the rules applicable to creditor's bills do not apply in this case, from the fact that the fund existed without cost or trouble to creditors, and it would be inequitable to prefer one over another in the same class.

4. Said judgment can not avail them, because it was not based on any pleading authorizing it, and it was not the result of a demand made by appellants, so as to call into exercise the powers of the court upon an issue made before the court.

5. Said judgment can not affect the rights of appellee in any manner, because he was not a party to the case at the time the same was rendered.

6. Said judgment was not rendered in a proceeding in rem, so as to bind the world; because, first, the property was not seized; and second, the court, under the rules governing proceedings in rem, had not jurisdiction to make any order affecting the rights of parties generally, without giving general public notice, and this the record shows was not given in this case.

7. If said judgment is held to bind appellee's rights, then he contends that its terms cover and protect his claim.

8. Appellee had a statutory lien on the fund when he intervened, to the exclusion of appellants; and this statute is constitutional, because appellants have no contract right whatever to the fund.

BROWN, Associate Justice.—In the year 1880 the East Line & Red River Railway Company, incorporated under the laws of Texas, in order to secure the payment of principal and interest of 1400 bonds for $1000 each, executed and delivered to the Fidelity Trust Company of New York, as trustee, a mortgage or deed of trust in which it conveyed to the said trustee, in trust, all of the property that it then owned or might thereafter acquire, covering all property of every kind; also "all the rents, issues, profits, tolls, and other incomes of said road." The deed of trust contains the following clauses:

"It is understood and agreed, that until default shall be made either in the principal or interest of any of said bonds, said company is suffered and permitted to possess, hold, and enjoy the said railway, with all its

appurtenances and equipments, and all property conveyed herein, and to use and operate the same, and to receive the income and profits thereof in the same manner as though this indenture had never been made and executed, except as herein after expressed with reference to any land scrip or lands hereafter earned or acquired from the State of Texas by the construction of said road."

By article 4 it is provided, that if default is made and continues for six months on any installment of interest, the trustee may, and on the demand of one-third in interest of the bonds outstanding shall, institute foreclosure proceedings to collect such interest; or if preferred may take possession of and operate the road until the net revenues are sufficient to satisfy unpaid interest, when the property shall be returned to the company.

By article 5, if default is made and continues for twelve months on any installment of interest, the trustee may, and shall on demand of one-third in interest of outstanding bonds, proceed by legal proceedings to foreclose said mortgage. No provision was made for sale by the trustee.

The railway company defaulted in the payment of interest on the 1st of June, 1888, and continued in default thereafter. The trustee did not take possession of the road, nor did he take any steps to foreclose the mortgage until the filing of the plea of intervention in the case of The State of Texas v. East Line & Red River Railway Company, June 18, 1891.

June 17, 1888, A. R. Stanton, appellee herein, was injured on the East Line & Red River Railway while it was being operated by the Missouri Pacific system as a part of the Missouri, Kansas & Texas Railway, and instituted suit in the District Court of Camp County against the East Line & Red River Railway Company about March, 1889. He recovered judgment against the railway company December 5, 1889. Notice of appeal was given, but not prosecuted, and a writ of error was sued out, but was never prosecuted, the record being lost. Stanton presented his judgment to the master appointed in the suit of The State of Texas v. East Line & Red River Railway Company on the 2nd day of November, 1889, which was allowed by the master and placed in the sixth class of claims to be paid by the receiver.

September 11, 1888, the State of Texas instituted a suit to forfeit the charter of the East Line & Red River Railway Company, in the District Court of Travis County, and on the 25th day of May, 1889, judgment was entered in said court, declaring the charter forfeited and dissolving the corporation, from which the company appealed to the Supreme Court of the State, giving a supersedeas bond, which judgment was by the said Supreme Court affirmed on the 17th day of December, 1889.

On the 11th day of March, 1890, the District Court of Travis County appointed W. M. Giles receiver of the East Line & Red River Railway Company, but the Circuit Court of the United States in the State of Kan-

sas had in the meantime appointed Eddy and Cross receivers for the same company, who had taken possession of it, and Giles did not get possession until April 13, 1891.

On the 18th day of June, 1891, the Central Trust Company of New York, which owned all the stock of the corporation, and Henry W. Poor, substitute trustee in the mortgage originally given to the Fidelity Trust Company, filed a plea of intervention in the suit of The State of Texas v. East Line & Red River Railway Company, asking a foreclosure of the said mortgage and the sale of the property covered by it.

On the 28th day of October, 1891, the District Court entered a decree adjudging that the trustee, Poor, recover of the receiver as such the sum claimed, and that the mortgage be foreclosed and the property sold. This decree required that the purchaser should deposit $10,000 to secure any deficiency that might exist in the revenue derived from the operation of the road, for the payment of claims adjudged to have a prior lien to the mortgage. Jurisdiction of the case and all parties was expressly retained by the court for the purpose of settling the rights of all parties having claims against the fund. In this decree certain classes of claims were named as having prior right to the lien of the mortgage, but the character of claim to which Stanton's judgment belongs was not mentioned, that claim not then having been presented to the master for allowance.

Before filing of the plea of intervention by Poor and the trust company, the receiver had paid out of the earnings of the road while in his hands for betterments of the said railroad the sum of $14,978.20, and there remained in his hands of the net earnings the sum of $9583.86 at the time the intervention was filed. From the beginning of the receivership to October 1, 1892, the receiver had invested in betterments of the railroad $20,000 of the earnings thereof, and at that date had on hand of such earnings $23,437.08.

The property was sold under the decree foreclosing the mortgage, and purchased by Henry W. Poor, who deposited the sum of $10,000 on his bid as required by order of the court.

In March, 1892, the District Court approved the allowance of Stanton's judgment, but reserved the classification of it for future consideration, and on the 24th day of December, 1892, the said court entered an order assigning the claim to the sixth class of claims to be paid by the receiver. It was also determined and ordered that Stanton's judgment was entitled, in payment out of the net earnings of the road, to priority over the debts secured by the mortgage, and it was ordered that in case the earnings should not be sufficient to pay all claims holding priority over Stanton's judgment, then it should be paid out of the money deposited on the bid at the sale of the property.

From the judgment of the District Court the receiver and Poor appealed, and the judgment was affirmed by the Court of Civil Appeals.

Plaintiffs in error object, that the court had no authority to open the case and to give to Stanton's judgment priority over the mortgage debt, because the judgment and decree which ordered the sale of the property adjudged the mortgage creditors entitled to recover subject to certain classes of claims named, which judgment was final. There was no error in overruling this objection. The decree was not final; and besides, in its recitals expressly reserved jurisdiction of the parties for the purpose of adjusting the rights of the parties having claims against the fund.

Counsel for plaintiffs in error claim that the judgment in favor of Stanton against the East Line & Red River Railway Company is void because it was rendered after the judgment of the District Court was entered dissolving the corporation.

It is well settled, that after a corporation is dissolved it can do no act, nor can any judgment be entered against it, although suit may be pending at the time of the dissolution. Life Association v. Goode, 2 U. C., 414; Bank v. Colby, 21 Wall., 614; Terry v. Bank, 66 Ga., 178; Thornton v. Marg. F. Co., 123 Mass., 32; Saltmarsh v. Bank, 17 Ala., 766.

The case of Lindell v. Benton, 6 Mo., 361, is sometimes cited as holding differently; but in that case judgment was rendered against the bank while it existed, and a proceeding commenced against the defendants as debtors of the corporation, in which last proceedings the objection was made that the bank had ceased to exist, which was overruled. The court is careful to state that judgment was rendered against the corporation before its dissolution.

In this case Stanton's judgment was rendered in the District Court against the railroad company after the rendition of the judgment declaring the charter forfeited, during the pendency of the appeal, and before affirmance in the Supreme Court. The appeal suspended the judgment of forfeiture, and the existence of the corporation did not terminate until the affirmance of that judgment. Railway v. Jackson, 85 Texas, 605; Arcia v. The State, 26 Texas Cr. App., 193.

In the case of Texas Trunk Railway v. Jackson the corporation had been dissolved by a judgment of the District Court, from which judgment the company appealed; after the appeal was perfected and before affirmance, the corporation executed a bond for writ of error in a case in which judgment had been entered against it by another court before the judgment of forfeiture. The question was presented, that the corporation being dissolved by the judgment of the District Court, could not make a valid bond. This court held that the appeal suspended the judgment of forfeiture, and that the company before affirmance was not dissolved.

The Code of Criminal Procedure declares, that one convicted of a felony shall be incompetent to testify as a witness unless restored by pardon.

In Arcia v. The State, supra, the Court of Criminal Appeals of this State held, that where one had been convicted of a felony and had taken an appeal, the judgment of conviction was suspended by the appeal, and such party was competent to testify after conviction and before affirmance of that judgment.

The judgment of Stanton was not void, and there was no error in overruling that objection.

It has been held, that a court of equity, in appointing a receiver for a railway company, upon the application of a mortgagee in a proceeding to foreclose the mortgage, may, in the exercise of a sound legal discretion, impose such terms as to the disposition of the earnings of the railway in the receiver's hands as may seem to be reasonable and just. Trust Co. v. Souther, 107 U. S., 594. In the exercise of this judicial discretion courts have taken large liberties with the legal rights of mortgagees, but we have found no case in which any court has gone to the extent of giving preference in payment out of the earnings of a railway to a claim of the character of Stanton's over the mortgage debts.

In this case the mortgagees did not cause the receivership. The State dissolved the corporation, took charge of its effects, and undertook to distribute them among those entitled thereto. There was nothing for the mortgagees to do but to come in and receive their legal rights at the hands of the State; they had no power to resist, no choice of remedies or courts.

No equities exist in favor of Stanton's judgment. His claim is not of a class that has been recognized heretofore by courts of equity; and if it were, the circumstances which justify the exercise of judicial discretion do not exist in this case. The matter must be determined by the rules of law, and preference given to legal priority.

Appellee Stanton is dependent solely upon the act of the Twenty-first Legislature upon the subject of "Receivers," chapter 59 of the Laws of 1889, page 55, the sixth section of which reads as follows:

"Section 6. All moneys that come into the hands of a receiver as such receiver shall be applied as follows: first, to the payment of all court costs of the suit; second, to the payment of all wages of employes due by the receiver; third, to the payment of all debts due by the receiver for materials and supplies purchased by the receiver during the receivership for the improvement of the property in his hands as receiver; fourth, to the payment of all debts for betterments and improvements done during the receivership to the property in his hands as receiver; fifth, to the payment of all claims and accounts against the receiver on contracts made during the receivership, and for all claims for stock and personal injury claims against said receiver accruing during the receivership, and all judgments rendered against the receiver for personal injuries and for stock killed; sixth, all judgments rendered against the person or persons

or corporations in suits brought before the appointment of the receiver in the action. And said claims shall have a preference lien on all of the moneys coming into the hands of the receiver which are the earnings of the property in his hands; and the court shall see that the money coming into the hands of the receiver as earnings of the property in his hands is paid out on the claims against the receiver in the order of their preference as named above; and it shall be the duty of the receiver to pay the funds in his hands which are the earnings of the property while in his hands as receiver, on claims against him in the order of preference named above.''

By the terms of this statute the judgment of Stanton was entitled to priority over the appellants' mortgage in the application of the earnings of the road while in the receiver's hands, provided the mortgage creditor did not have a right in the earnings which the Legislature could not take away.

The mortgagees under this mortgage had no lien upon the earnings of the road while it remained in the hands of the company. Railway v. Cowdry, 11 Wall., 483; Smith v. Railway, 124 Mass., 157; Railway v. Express Co., 81 Ill., 534; Gilman v. Tel. Co., 91 U. S., 616; Bridge Co. v. Heidelbach, 94 U. S., 798.

The lien of the mortgage upon the earnings of the railway depended solely upon the terms of the mortgage, and until the trustee took some steps authorized by the mortgage to appropriate the earnings, no lien attached to the earnings. Smith v. Railway, 124 Mass., 157; Ellis v. Railway, 107 Mass., 28; Howell v. Ripley, 10 Paige, 43; Miltenberger v. Railway, 106 U. S., 307.

By the terms of the mortgage the company was to remain in possession of the road, and had the right to operate the same and to appropriate the earnings and income. Upon default in the payment of interest continuing for six months, the trustee was empowered to take possession of the railway and operate it, applying the net earnings to the satisfaction of the interest, or he might sue to foreclose the mortgage; and if such default continued for twelve months, the trustee was authorized to sue to foreclose the mortgage. The trustee did not demand nor take possession of the road, and took no steps towards foreclosing the mortgage until the 18th day of June, 1891, when the plea of intervention was filed. It follows that the lien of the mortgage did not attach to the earnings of the road in the hands of the receiver which were earned before the date of the filing of the intervention; but from that time the lien of the mortgage attached to such earnings, subject to the expenditures and claims which by law were given a preference over it.

The right to take possession of the road and to appropriate the earnings, or by suit to obtain a lien upon and right to the earnings, constituted in part the obligation of the contract, and in so far as the Legislature

endeavored to give a preference in the earnings to a claim which before its enactment had no lien on such earnings, in preference to the lien of a mortgage made before the law was enacted, giving a lien in express terms, the law violated the obligation of the contract, and was void as contrary to article 1, section 10, clause 1, of the Constitution of the United States, and of article 1, section 16, of the Constitution of this State.

Mr. Cooley says: " If any subsequent law affect to diminish the duty or to impair the right, it necessarily bears on the obligation of the contract in favor of one party to the injury of the other.'' Cool. on Const. Lim., 346.

When Poor, as trustee, and the trust company filed their plea of intervention, the receiver had on hand, after paying all prior expenses, the sum of $9583.86 of the earnings of the railway while in his possession. To this sum appellee had a right, if the settlement had been made then; and so far as the rights of the mortgagees were concerned, the court might have then ordered that money paid to defendant in error upon his judgment. But the right of Stanton was subject to the claims that might accrue against the receiver in the future operation of the railway by him, and the court had the right to hold the money on hand to meet such claims as they might arise.

It does not clearly appear what disposition was made of the money on hand at that time; nor does it appear whether or not the earnings of the road subsequent to the intervention were sufficient to pay expenses as they accrued. We will assume that the necessities of the receivership required that the fund on hand should be used, and that it was used, in paying claims belonging to the five classes enumerated in the statute as prior to Stanton's in order of payment. This is most favorable to the plaintiffs in error.

While it is true that the filing of the intervention fixed the right of the trustee to the future earnings of the railway in the hands of the receiver, ·this was not an absolute right, but was subject to the payment òf all claims against the receiver embraced in the first five classes named in the statute, which must be paid before the earnings could be applied to the mortgage debt or interest thereon. Hale v. Frost, 99 U. S., 392; Fosdick v. Schall, 99 U. S., 235.

From the findings of the court it appears, that after paying all expenses, including betterments, there remained in the hands of the receiver $23,437.86, derived from the operation of the road by him. If the sum on hand at the time of the intervention was used, then it discharged $9583.86 of the expenses accruing subsequent to the intervention, and to which the mortgage debts were subject. In other words, if that sum had not been used by the receiver, but had been paid to Stanton, the sum on hand from earnings to which the trustee was entitled would have been that much less, that is, $13,853.22. It is therefore evident that $9583.86

to which Stanton had a right prior to the trustee's claim under the mortgage has been used to discharge debts of the receivership while operating the road for the benefit of the mortgagees, which claims would have had a right in the earnings prior to the mortgage debts. To this extent the defendant in error was entitled to receive payment on his judgment out of the earnings of the road, whether earned before or after the filing of the plea of intervention, if there should any such remain after the payment of all claims belonging to the classes higher than his as designated in the statute. Burnham v. Bowen, 111 U. S., 782.

The claim of defendant in error was by the statute given a lien upon the earnings only, and upon so much thereof as might remain after paying all claims having prior right. He had no right by the statute (nor independent of it) to resort to the corpus of the property for the payment of his judgment. The judgment of the District Court directed that in case the earnings on hand were not " sufficient after paying claims of a higher class," defendant in error should be paid out of the cash deposited by the purchaser of the property under the order of the court. The deposit money was a part of the purchase price of the property, required to be placed under the control of the court, if the property was purchased by any one to whom the money would be payable, for the purpose of supplementing the earnings, if necessary, in the payment of any claim for which resort might be had to the property itself. In ordering the payment of the judgment of Stanton to be made out of the deposit the District Court erred, for which error the Court of Civil Appeals should have reversed the judgment.

The judgments of the District Court and of the Court of Civil Appeals are reversed, and this cause is remanded to the District Court with instructions to cause the earnings derived from the operation of the railroad during the receivership to be applied to the payment of the claims, if any, unpaid that exist against the receiver, and designated in the first five classes of claims enumerated in the statute as quoted, in the order enumerated; and if there remains sufficient of said earnings, then to pay off all claims of the sixth class. If there should not be sufficient to pay all claims in full, then that they be paid pro rata out of said earnings, but in no event to apply the deposit money to the payment of the sixth class of claims.

*Reversed and remanded..*

Delivered April 26, 1894.