### ELY v. GREENBAUM.

No. 228.

Circuit Court of Appeals, Second Circuit.
Aug. 10, 1936.

Jacob J. Lesser, of New York City (Israel Belfer, of New York City, of counsel), for appellant.

Samuel Blumberg, of New York City (Melvin Kleeblatt and J. D. Hyman, both of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action by the trustee in bankruptcy of Favorite Manufacturing Company, Inc., to set aside certain payments made by the bankrupt to the defendant who was one of its creditors on the ground that they were preferences. The petition in bankruptcy was filed on March 24, 1932, and the bankrupt was adjudicated on April 11 of that year. The payments in question were made to the defendant on the following dates:

| 1931 | |
| --- | --- |
| Dec. 14 | $10,000 |
| Dec. 31 | 2,500 |
| 1932 | |
| Jan. 11 | 2,500 |
| Jan. 20 | 1,400 |
| March 7 | 1,000 |
| | $17,400 |

The jury allowed recovery of all of the above items.

The complaint set forth three causes of action for the recovery of alleged preferential payments: (1) Under sections 60a and 60b of the Bankruptcy Act, as amended, 11 U.S.C.A. § 96 (a, b); (2) under section 15 of the New York Stock Corporation Law (Consol.Laws, c. 59); and (3) under section 64 of the New Jersey Corporation Law (2 Comp.St.1910, p. 1638, § 64).

It does not seem to us that at the time the sum of $10,000 was paid a jury could properly find that the Favorite Company was insolvent in the bankruptcy sense, namely, on the ground that its assets were less than its liabilities, nor could a jury find that it was insolvent in the sense used in section 15 of the New York Stock Corporation Law, or in section 64 of the New Jersey Corporation Law, on the ground that it was unable to meet its obligations as they matured.

In respect to the payment of $10,000 on December 14, 1931, if we go back to the balance sheet (Exh. N) of the Favorite Company of November 2, 1931, a capital and surplus of $9,344.50 is shown. It is probably true that the fixed assets appearing at a net valuation of $5,688.49 were placed at too high a figure and that there should be other deductions. But accepting the criticisms made in appellee's brief and assuming that the balance sheet should be corrected by an inventory value of $40,000, instead of $45,000, a liability for a bonus to the defendant Greenbaum of $8,000, though not payable until the end of the year, a deduction of $2,500 as a 5 per cent. reserve against the accounts receivable, and a reduction in the valuation of the machinery, furniture, and fixtures to the amount of $3,000, there would only be a deficit of about $9,000. To the assets was added during the month a windfall of $25,000 which the company got from the insurance collected on

November 20, 1931, upon the life of its president, Max Saltzberg. In other words, on appellee's own figures there would be a surplus of about $16,000. We should perhaps add that the appellee also insists that there should be a further deduction of $6,000 based upon a prorated operating loss for the year of $55,000, which would accrue between November 2 and December 14, 1931. Even so there would remain a net balance of about $9,000. In such circumstances, it would seem to be perilous to allow a jury to speculate as to the solvency of the company on December 14, so we think recovery of the $10,000 item should not have been permitted.

■ By January 1 the books of the company showed a balance of only $1,700, and this without an adequate deduction from the valuation on the books of the machinery, equipment, furniture, and fixtures. In the December 31 balance sheet, the machinery and equipment were given a net value of $5,301.32, and the furniture and fixtures a net value of $172.10, or together $5,473.42. These chattels were carried in the schedules in bankruptcy at only $850, and were sold at auction with active bidding at only $1,700. In view of the evidence of overvaluation of the fixed assets, we think that a jury was justified in finding insolvency on December 31, 1931, when the $2,500 was paid and likewise at the various dates in January and March when the subsequent payments were made.

■ The jury was also justified in finding that Greenbaum had reasonable cause to believe that the Favorite Company was insolvent at the time when the last four items were paid. His son-in-law Bacon had been a salesman for the company since 1928, and introduced Greenbaum to Saltzberg, the president, in the year 1929. Bacon visited the factory frequently and finally became a director of the company. The agreement dated June 3, 1931, under which Greenbaum made the loans to the company and took assignments of its accounts receivable, provided that the lender should advance to the borrower sums aggregating $50,000, provided for the payment of commissions and an $8,000 bonus to the lender, and also provided that the company should permit the lender, or his representatives, from time to time, and without notice, to audit its books and to examine the accounts and papers kept by the borrower as well as all letters and reports received relating to sales and dealings with its customers. The defendant's personal accountant, Leonard Cohen, in March, 1931, became the accountant for the company and audited its books. Greenbaum visited the premises of the company in person on November 2, 1931, when Cohen had taken off the trial balance. Moreover, from June, 1931, down to the time in November when the president, Saltzberg, lost his life, the company furnished Greenbaum with reports of its business activities, including sales made and cash received. (Record, fols. 182, 787). Under the circumstances we have described, it can hardly be doubted that a jury would be justified in finding that Greenbaum was at all times informed as to the financial condition of the company and as soon as it became insolvent was aware of that fact.

■■ The plaintiff stands in no more favorable position in respect to the causes of action brought under section 15 of the New York Stock Corporation Law or section 64 of the New Jersey Corporation Law to recover payment of the $10,000 made on December 14, 1931, than he stood in under sections 60a and 60b of the Bankruptcy Act. At that time the company was doing an active business and meeting its obligations in due course. Indeed, there was no proof of any intent to prefer Greenbaum seeing that he was often deferred to other creditors and seems ultimately to have received a smaller percentage than any creditor except the F. O. Walter Coal & Supply Company, a creditor having a claim totalling only $260 upon which there has been paid $100 on account. If we regard the payment of $10,000 to Greenbaum on December 14 as valid, there still remained due him $17,400, including the "bonus" of $8,000. The four subsequent payments amounting to $7,400 which he received prior to the bankruptcy were approximately 42 per cent. of his total claim. F. O. Walter Coal & Supply Company received payments prior to the bankruptcy of $100, or approximately 38 per cent. of its total claim. The balance of Greenbaum's claim is entirely uncollectible because proof was not filed within the time required by the Bankruptcy Act. Consequently, any assets remaining for distribution must be wholly applied to the other creditors.

The assets in the hands of the trustee amount to $2,676.14, plus an additional $300 which he expects to be able to collect out of the unpaid accounts receivable. The total of general claims filed is $5,571.19, and the total of the preferred claims filed and allowed amounts to $1,634.79.

504

We understand that the allowances of the claims filed are only provisional (fols. 116–118), but even assuming they are final, we cannot say that there is not enough to pay the expenses of administration, the preferred claimants, and the small sum which would be necessary to bring the percentage received upon the claim of F. O. Walter Coal & Supply Company to a parity with that received by Greenbaum. It may be said that after deducting the claims of the preferred creditors and this small dividend for the general creditors, the balance would only be about $1,100, and that such an amount would be an unduly small compensation for the trustee and his attorneys. But it must be remembered that if we are right in our conclusions, this action was unnecessary, the general creditors would have done as well or better without it, and there would have been sufficient funds to pay the trustee, the referee, and counsel. No attempt by the defendant to deal unfairly with the estate has been established and the distributions among the creditors seem in general to have been equitable.

Inasmuch as the court below reserved decision on the motion to dismiss the complaint, we may now direct final judgment under the ruling of the Supreme Court in Baltimore & C. Line, Inc., v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636. Accordingly, the judgment is reversed and final judgment directed dismissing the complaint on the merits.

Judgment reversed and complaint dismissed on the merits.