## BRYCE v. NATIONAL CITY BANK OF NEW ROCHELLE et al. (two cases).

### Nos. 33, 34.

Circuit Court of Appeals, Second Circuit.
Dec. 6, 1937.

Westall, Stohldreier & Barrett, of White Plains, N. Y., for appellant.

Dunlap, Otto & McGovern, of New Rochelle, N. Y., for appellees.

Before MANTON, CHASE, Circuit Judges, and COXE, District Judge.

CHASE, Circuit Judge.

The plaintiff, a judgment creditor of defendant Braemoor Corporation, brought an action in July, 1935, in the Supreme Court for the state of New York (county of West-chester) against these defendants to set aside as fraudulent and void an assignment of a mortgage by Braemoor Corporation to the First National Bank of New Rochelle and to compel an accounting for all collections under the mortgage since the date of the assignment. It was alleged that execution had been issued against Braemoor Corporation and returned unsatisfied and that the action was brought in behalf of all in like situation who should join. The grounds upon which the suit was predicated were that Braemoor Corporation was insolvent at the time the assignment was made and acted with intent to hinder, defraud, and delay the plaintiff, its judgment creditor.

The second cause of action was commenced in August, 1935, to set aside as fraudulent and void for like reasons a judgment of foreclosure and the sale of real estate thereunder to the bank in an action brought by the defendant bank and its receiver against the defendant Braemoor Corporation to foreclose a real estate mortgage held by the bank on property in New Rochelle, N. Y., to which Braemoor Corporation held the legal title subject to the mortgage. It was alleged that at the time of foreclosure the bank and its receiver had received and then held under an assignment of rents amounts, which should have been applied against the debt due on the mortgage, more than sufficient to pay all arrears, and that the foreclosure and sale were with intent upon the part of the defendants to defraud the plaintiff.

It appeared that the Braemoor Corporation was the wholly owned subsidiary of the defendant bank whose officers were all employees of the bank and whose sole place of business was at the bank. It was organized on March 30, 1932, under the Business Corporation Laws of New York, to act as the nominee or agent of the bank whenever that was necessary or desirable and its activities were so confined.

The transactions with the plaintiff which resulted in his becoming a judgment creditor of Braemoor Corporation had to do with an attempt by the bank to realize what it could out of property of the White Plains Daily Corporation on which it held a mortgage that in December, 1932, was in default. Its representatives took the matter up with the plaintiff in that month tentatively with the object in mind of having him take over the property to operate as a newspaper plant, a use for which it was

adapted. The conversations continued into the following February. He was favorably inclined to undertake the project when he was told that the bank could not go into the newspaper business, and so his contract would have to be only with its subsidiary Braemoor Corporation. He was willing to contract with Braemoor alone, and on February 28, 1933, entered into a contract with it knowing that he had only its legal responsibility, although he knew that it was acting at the behest of the bank which approved the contract. The terms of the agreement need not be stated. Braemoor Corporation did not fulfill its obligations; its liability was determined by arbitration in accordance with the terms of the contract; and further proceedings were had to the end that the plaintiff secured a final judgment on the award on June 21, 1935. It was the execution which issued on this judgment that was returned unsatisfied.

The bank itself was in financial difficulty in 1933 to the extent that on March 4 in that year it was closed and never reopened. It is being liquidated with defendant Loughman as its receiver, who was appointed to that position on February 1, 1934, having previously acted as conservator from August 4, 1933. Previously, Rennie, who was the president of the bank when it closed, had been acting as conservator since March 21, 1933, when he had been appointed by the Comptroller of the Currency.

The only obligation under its contract which Braemoor Corporation fully performed was to take title on March 24, 1933 to the real estate where the newspaper plant was located. Its failure otherwise to perform was the subject of complaint by the plaintiff to Rennie at various times between the middle of March, 1933, and the 15th of the following June, when the plaintiff finally stopped further performance himself. During the just mentioned period the plaintiff talked with Rennie and with Shea, a former officer of the bank, about Braemoor's failure to perform as agreed, and both assured him that Braemoor had sufficient assets to enable it to perform. He was thus encouraged to continue performance until June 15th. Braemoor's default not having been cured, he then gave up.

The subject matter of the first cause of action should now be stated more in detail. On December 30, 1931, one Nick Lanni gave to the First Mortgage Guaranty & Title Company a bond secured by a mortgage on real estate in Westchester county in the sum of $18,000. On March 21, 1932, this security was assigned to the defendant bank, which paid $18,000 for it. On January 10, 1933, the bank assigned the mortgage to Braemoor Corporation for merely a nominal consideration to enable Braemoor, holding it as the nominee of the bank, to commence foreclosure proceedings. On January 19, 1933, Braemoor did bring suit to foreclose which resulted in a decree of foreclosure being entered on March 31, 1933, accompanied by an order of sale. Pursuant thereto the property was sold to Braemoor on May 23, 1933, for the sum of $1,095 which was paid by the bank. On July 11, 1933, Braemoor, acting under the bank's instructions, sold and conveyed the property to one Micou for $2,000 in cash and a purchase price mortgage for $18,000 which it then assigned to the bank. Braemoor never paid anything for the Lanni mortgage except the nominal consideration stated as $1, and held it and its proceeds solely for the bank as its fiduciary.

Further details in respect to the second cause of action are that on March 30, 1929, one Brucker gave a bond and mortgage to the bank on real estate in White Plains, N. Y., to secure a loan of $6,000. This mortgage fell due on March 20, 1932, but was not paid. In order to avoid foreclosure, Brucker and his wife, in December, 1932, deeded the property subject to the mortgage to Braemoor Corporation which took the title without paying anything and held it merely as the nominee, and for the sole benefit, of the bank. On July 1, 1933, Braemoor assigned the rents to the bank. A judgment lien held by Huguenot Trust Company on the property was a cloud upon the title which the bank undertook to clear by the foreclosure of the mortgage. This proceeding resulted in a judgment of foreclosure on June 4, 1935, and a sale thereunder to the bank on June 9, 1935, which gave it the title in fee and wiped out the mortgage and judgment lien. The bank applied the rents assigned toward the payment of another debt owed to it by Braemoor instead of to the mortgage debt, and the plaintiff claims that was a fraudulent and collusive means whereby the mortgage foreclosed was allowed to go into default.

The basis of the plaintiff's claim in both actions is the fraudulent transfer by his insolvent creditor of property without consideration which was void either under article 10, section 270 et seq., of the New York Debtor and Creditor Law (Consol.

Laws, c. 12), or under section 15 of the New York Stock Corporation Law (Consol.Laws, c. 59), supplemented by the claim of estoppel arising out of the representations of Rennie and Shea after the bank closed that Braemoor Corporation had sufficient assets to carry out the contract. Section 273 of the above-mentioned article 10 is the main reliance of the plaintiff and provides that: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

 Had the property transferred to the bank been that of Braemoor, the plaintiff would, indeed, be entitled to reach it, for Braemoor was insolvent when the transfers were made. Feist v. Druckerman (C.C.A.) 70 F.2d 333. However, in regard to everything so transferred Braemoor had nothing but the bare legal title, and held even that solely as the fiduciary of the bank. So nothing that Braemoor did served to decrease any of its assets which were ever subjects to the claims of its creditors. As the transactions which the plaintiff has attacked did not deplete the assets of Braemoor, they were not fraudulent as to the plaintiff, whose only interest is that of a creditor. In re Fred Stern & Co. (C.C.A.) 54 F.2d 478; Hoyt v. Godfrey, 88 N.Y. 669; Stolz, Trustee, v. Ginsburg, 217 App.Div. 701, 215 N.Y.S. 927.

To avoid the effect of the fact that Braemoor's actual assets were not depleted, the plaintiff relies upon the representations made to him after the bank closed that Braemoor had enough property to enable it to perform and that he continued performance until June 15, 1933, in reliance upon them. It is urged that that is an estoppel against these defendants.

With this we cannot agree. We need not point out that whatever was said was general, having no definite relation to either the Lanni or Micou mortgages or the Brucker property. The bank was closed before any of the representations relied on were made. Whatever they were, they were not shown to have been made before Rennie was appointed conservator by the Comptroller of the Currency. When they were made, the assets of the bank were all being held under the authority of the government as a fund for the benefit of its creditors. The rights of all in respect to them were fixed as of the time the assets were so taken in charge. At that time the plaintiff had no recognizable claim upon any of the assets of the bank. Obviously he could not by talking with former officials of the bank and acting upon their representations secure merely by estoppel rights he did not have as to the bank's property when the conservator was appointed. That was the time as of which claims against the bank must be resolved. First Nat. Bank of Selma v. Colby, 21 Wall. 609, 22 L.Ed. 687. And as of that time this plaintiff had no cause of action in either suit.

Affirmed.