## WILLCOX v. GOESS.

District Court, S. D. New York.
March 28, 1938.

842

Morris Ehrlich, of New York City, for plaintiff.

Conboy, Hewitt, O'Brien & Boardman, of New York City (Bernard Sobol, of New York City, of counsel), for defendant.

WOOLSEY, District Judge.

I deny the plaintiff's motion for a verdict, and grant the plaintiff an exception.

I grant the defendant's motion for a verdict, and grant the plaintiff an exception.

I direct the jury to find a verdict for the defendant herein.

I. This cause now before me arises out of the same situation as was involved in the case of Willcox v. Goess, D.C., 16 F. Supp. 350, which was before me two years ago, and, owing to the fact that I had to go through that extremely arduous trial and write an opinion afterwards, I am able to deal with this cause more easily than any one possibly could who had not had the experience which I had in the former case.

II. The basis of my subject matter jurisdiction is the same as it was in Willcox v. Goess, D.C., 16 F.Supp. 350, 353.

It was stipulated between the parties at the beginning of the trial that this cause should be tried before a jury of one, and that counsel for each party would make a motion for a directed verdict in its favor.

III. The alleged liability herein is based on section 15 of the New York Stock Corporation Law, Consol.Laws N.Y., c. 59.

■ The decision of the Circuit Court of Appeals for the Second Circuit, in Irving Trust Company v. Chase National Bank, 72 F.2d 668, requires that, in order to make a recovery under that statute, the plaintiff must establish: (1) That insolvency existed or was imminent at the time when the transfers or payments were made; (2) that the transfers or payments resulted in a preference; (3) that the transferee, at the time the transfers or payments were received, had notice or reasonable cause to believe that the transfers would effect a preference; and (4) that an intent existed on the part of the insolvent to give a preference to the transferee.

IV. The next question is to consider whether, under the requirements thus laid down, insolvency existed in this cause or was imminent when the transfers or payments were made.

In the former cause between these parties, to which I have referred above, I had occasion to consider the insolvency of J. A. M. A. within the meaning of section 15 of the New York Stock Corporation Law, first, on October 13, 1931, at which time I held that it was not insolvent. Cf. 16 F.Supp. 350, at page 368.

The next date on which I considered J. A. M. A.'s insolvency within the meaning of said act was May 17, 1932, at which time I held that its insolvency was obviously imminent. Cf. 16 F.Supp. 350, at page 370.

The next date on which I considered the insolvency of J. A. M. A. within the meaning of said act was on July 25, 1932, at which time I held that it was hopelessly insolvent. Cf. 16 F.Supp. 350, at page 371.

In the present cause I am asked to determine, inter alia, the question of J. A. M. A.'s solvency on July 6, 1932, when it paid interest to the Harriman National Bank in the sum of $2,520.80 on a loan of $150,000 which matured and was renewed

on that day. The rate of interest was 5 per cent. per annum.

I am also asked to determine herein the question of the solvency of J. A. M. A. on July 11, 1932, when it paid to the Harriman National Bank the sum of $2,218.14 on a loan of $195,000 which matured and was renewed on that day. The rate of interest on this loan was 4½ per cent. per annum.

For the reasons stated in extenso in my decision in Willcox v. Goess, D.C., 16 F.Supp. 350, the findings of fact in which cause have been incorporated in this record, I am satisfied that on these interior dates, July 6th and July 11th, the insolvency of J. A. M. A. was imminent within the meaning of section 15 of the New York Stock Corporation Law, and that, consequently, plaintiff has succeeded in establishing insolvency, which is the first of the requisites laid down by the Circuit Court of Appeals in the case of Irving Trust Company v. Chase National Bank, 2 Cir., 72 F.2d 668, above mentioned.

It is perfectly clear, for the reasons stated in my previous opinion, that the situation of the bank was getting worse and worse from May 17, 1932, when I held that the insolvency of J. A. M. A. was imminent—at least until the election of Mr. Henry B. Cooper as president of the bank on July 21, 1932.

V. The next requisite laid down by the Circuit Court of Appeals in the case which I am following is that, in order to sustain a cause of action, the transfers or payments must result in a preference.

It is, I suppose, common ground that the time at which one has to determine whether there is or is not a preference is the time when one can look at the result of the bankruptcy proceeding or other insolvency proceeding, and not the time when the payment of the alleged preference was made. Cf. Palmer Clay Products Company v. Brown, 297 U.S. 227, 228, 56 S.Ct. 450, 80 L.Ed. 655; In re Palmenberg Sons, Bronx Brass Foundry, Inc., v. Irving Trust Company, 2 Cir., 76 F.2d 935, 937.

■ Underlying all the statutes passed for the protection of creditors, there is what I might perhaps call a lowest common denominator necessary to found a cause of action; namely, that there must be a diminution of the assets of the estate available ratably to the general creditors. This is true whether the question be of a preference under the Bankruptcy Act, 11 U.S.C.A. § 60a, 60b, 11 U.S.C.A. § 96(a, b), Ely v. Greenbaum, 2 Cir., 85 F.2d 501, 502, or a transfer in fraud of creditors under the Debtor and Creditor Law of New York state, Consol.Laws, N.Y., c. 12, § 270 et seq.; Bryce v. National City Bank of New Rochelle, D.C., 17 F.Supp. 792, affirmed 2 Cir., 93 F.2d 300, or a preference under section 15 of the New York Stock Corporation Law, Ely v. Greenbaum, 2 Cir., 85 F.2d 501; In re Fred Stern & Company, Inc., 2 Cir., 54 F.2d 478, 480.

■ Consequently, when it is claimed that there was a preference in this cause, I have to apply the pragmatic test of whether on the final liquidation J. A. M. A.'s assets ratably available to general creditors was diminished by what was done.

By a resolution of J. A. M. A.'s board of directors, dated January 26, 1923, and filed with the Harriman National Bank July 7, 1930, the bank was given a general lien on J. A. M. A.'s deposit account and on all its property in the hands of the bank to cover any amount due to the bank from J. A. M. A. Cf. Willcox v. Goess, D.C., 16 F.Supp. 350, at page 360.

As is shown in this record, on the dates in question the bank had a note from J. A. M. A. for $150,000 maturing July 6, 1932, and a note from J. A. M. A. for $195,000 maturing July 11, 1932, and J. A. M. A. had on deposit with the bank on July 6, 1932, $15,800.27, and on July 11, 1932, $11,937.13.

As to the alleged preferential payments of interest on each of these dates, it is urged upon me that, under Judge Knox' decision in Munroe v. Harriman, D.C., 16 F.Supp. 341, affirmed, 2 Cir., 85 F.2d 493, 111 A.L.R. 657, and my own decision in Satterwhite v. Harriman National Bank, D.C., 13 F.Supp. 489—in both of which causes the control of the bank by Harriman was stressed—I should decide this cause for the plaintiff and against the bank.

■ For the sake of argument only, it may be assumed mutuality of intent to prefer was successfully made out, although I do not know that this is necessarily so, because the actual renewal of the note and the payment of the interest thereon on July 6 and July 11, 1932, was done in ordinary course—but it is not necessary

for me to decide this question, it seems to me, because I think it is perfectly clear that there was not any diminution of the assets of J. A. M. A. ratably available to general creditors when the Harriman National Bank, which had a lien on all its deposits with the Harriman National Bank, and all its property which might be in the hands of the bank, chose, whether under Harriman's direction or not, to take part of those assets and transfer them from the credit of J. A. M. A. with the bank, to the credit of the bank itself. What the transaction herein really amounted to was a foreclosure by the bank on some of its security.

It seems to me there is not any escape—when you consider these transactions from this point of view, irrespective of the form which they actually took—from the conclusion that the defendant must prevail herein, as I stated in the beginning of this memorandum.

VII. Exceptions to my rulings on the two motions are allowed to the plaintiff herein.

■ I believe, as this is a case at law, that it is not within my discretion to disallow costs, but if I could do so I would, because I think that a trustee in bankruptcy ought to be free to follow whatever reasonable quests his investigations may lead him to think it is wise to follow.

There were some other interesting questions raised in this cause, but I do not think it is necessary to decide them in view of my opinion on the matters already discussed.

Let judgment be entered in accordance herewith.