Statement.

### 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

SMITH & MARSH V. NORTHERN NECK MUTUAL FIRE ASSO-
CIATION OF VIRGINIA.

March 9, 1911.

1.  INSURANCE—*Limitation of Actions—Statute Extending Time Fixed
    by Policy—To What Policies Applicable.*—The act of assem-
    bly declaring that "no provision in any policy of insurance
    limiting the time within which a suit or action may be brought
    to less than one year after loss shall be valid" applies not only
    to policies thereafter issued, but also to policies in force when
    the act was passed and upon which a right of action had not
    accrued.

2.  LIMITATION OF ACTIONS—*Increasing or Diminishing Period—Con-
    ventional Limitations—Power of Legislature—Constitutional
    Law.*—It is within the power of the legislature to shorten the
    period of limitation on an existing contract, leaving always a
    reasonable time within which to invoke a remedy for its breach,
    or to prolong the period of limitation where the right to plead
    it has not accrued. The power of the legislature to change
    the limitation is the same whether the limitation be imposed
    by statute, or by stipulation of parties. The object and effect
    are the same, and the one as well as the other operates only
    on the remedy. While a contract is presumed to be made with
    reference to existing laws, those laws may be altered, amended
    or repealed without affecting the binding force of the contract,
    so long as a sufficient remedy is left for its enforcement.
    Legislation of this nature does not impair the obligation of
    contracts.

3.  LIMITATION OF ACTIONS—*Conventional Limitations.*—Contractual
    limitations differing from those provided by statute have been
    upheld in this State, in the absence of any legislation on the
    subject.

Error to a judgment of the Circuit Court of Northumber-
land county in an action of assumpsit. Judgment for the
defendant. Plaintiffs assign error.

*Reversed.*

The opinion states the case.

*R. O. Norris* and *T. J. Downing,* for the plaintiffs in error.

*Asa S. Rice* and *Frank G. Newbill,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The firm of Smith & Marsh represent that on the 14th of March, 1908, they instituted an action of trespass on the case in assumpsit in the Circuit Court of Northumberland county against the Northern Neck Mutual Fire Association of Virginia, a corporation chartered under the laws of the State of Virginia, which resulted in a final judgment against them, which is before this court for review.

It appears that on the 18th of September, 1905, Smith & Marsh insured for two years a stock of merchandise in their storehouse at Miskimmon, in Northumberland county, against loss by fire with the defendant corporation; that on the 29th of August, 1907, the merchandise so insured was destroyed by fire, and on the 30th day of October, 1907, they instituted an action on the policy in the Circuit Court of Lancaster county, which was dismissed on their own motion on the 28th of March, 1908. On the 14th of March, 1908, they instituted their action of assumpsit in the clerk's office of the Circuit Court of Northumberland county, in which county the storehouse was situated; and on the 14th of June, 1909, the defendant corporation filed a special plea, setting out a clause in the policy which provided, that any action brought to enforce the policy must be brought within six months after the date of the loss, and averring that this action was barred by that clause, which special plea was sustained by the court, upon demurrer, and the case was dismissed at plaintiffs' costs.

Three grounds of error are assigned to this ruling of the

court: (1) That an action for the recovery of the insurance in accordance with the terms of the policy was instituted within six months from the day of the loss, and was continuously prosecuted from that time to the present; (2) that the special plea which was sustained by the court was not filed by the defendant until the 14th of June, 1909, and for that reason it is insisted that the plea was filed too late; (3) that the policy of insurance with the defendant was taken on the 18th of September, 1905, and was in force for two years from that date; that the loss occurred on the 29th of August, 1907, and at the time of the loss there was in force the following statute: "No condition in, or endorsed on, any policy of insurance, nor any restrictive provision thereof, shall be valid unless such condition or restrictive provision is printed in type as large as long primer or ten-point type, or is written in pen and ink or typewriter, in or on the policy, and no provision in any policy of insurance limiting the time within which a suit or action may be brought to less than one year after loss shall be valid." This statute will be found in Acts of Assembly, 1906, p. 143, section 39, of an act approved March 9, 1906, entitled "An act concerning bureau of insurance, and insurance, etc."

Our view of the third assignment of error being conclusive of the case, we shall not consider the first two assignments.

The policy was taken out on the 18th of September, 1905. It remained in force until the 18th of September, 1907. The loss occurred on the 29th of August, 1907; and the act to which we have referred was approved March 9, 1906. At the time the policy was issued this contractual limitation was valid under the decisions of this court; but the legislature saw fit, in the exercise of its police power, to declare such contracts to be unlawful, and declared that no provision in any policy of insurance limiting the time

within which a suit or action may be brought to less than one year after loss shall be valid.

The first question which arises is: Does that act apply to policies of insurance which had been issued before its passage, or is it wholly prospective in its operation?

Upon this point we think the case is controlled by *Town of Danville* v. *Pace*, 25 Gratt. 1, 18 Am. Rep. 663. The legislature in March, 1873, passed an act which provided that, "No corporation shall hereafter interpose the defense of usury in any action; nor shall any bond, note, debt or contract of such corporation be set aside, impaired or adjudged invalid by reason of anything contained in the laws prohibiting usury." The town of Danville insisted that it had the right to plead usury as to contracts entered into before the passage of this act, insisting that the act applied only to causes of action arising on contracts made after its adoption, relying upon the well-settled rule, that statutes are to be construed as prospective in their operation, unless their language plainly shows the intention of the legislature that they shall have a retrospective effect. The court in its opinion, answering this position, says: "It will be observed that the words used are very comprehensive. 'No corporation shall hereafter interpose the defense of usury in *any* action.' The words 'any action' necessarily include suits instituted before as well as after the passage of the act. There is nothing in the context to give them a more limited operation. The defense is prohibited in all cases. In order to adopt the construction insisted on by the defendant, other words must be incorporated into the body of the act, so as to make it read, 'No corporation shall hereafter interpose the defense of usury in any action upon a contract hereafter made';" and the statute was held to apply to existing as well as to future obligations.

The statute under consideration is equally as compre-

hensive. "No provision in any policy of insurance limiting the time within which a suit or action may be brought to less than one year after loss shall be valid." There is nothing to indicate a purpose upon the part of the legislature to limit the operation of this comprehensive language to policies thereafter to be issued. The injury was as great, the remedy as much needed with respect to the one class as the other, and upon this phase of the case *Town of Danville* v. *Pace* seems to be conclusive.

But it is contended that it was not within the power of the legislature to enact such a law with respect to policies theretofore issued.

It does not in our judgment impair the obligation of a contract. The policy was still in force when the statute was passed; the right of action had not accrued, for the loss did not occur for more than a year after the passage of the act; and we are of opinion that it is within the power of the legislature to shorten the period of limitation, leaving always a reasonable time within which to invoke a remedy for a breach of contract, or to prolong the period of limitation where the right to plead it has not accrued.

In *Curtis* v. *Whitney*, 13 Wall. 68, 20 L. Ed. 513, the plaintiff in error, who was the plaintiff in the court below, brought suit under the statute of Wisconsin to have her title to the land in controversy, which she claimed under a deed made on a sale for taxes, established and quieted as against the defendants. The sale for taxes took place on the 11th day of May, 1865, and she received a certificate stating the sale, and that unless the land was redeemed within three years by payment of the amount bid, with interest and penalties, she would be entitled to a deed for the land; and accordingly, on the 12th day of May, 1868, she received the deed which she seeks to establish as the title to the land. But the legislature of Wisconsin, on the 10th of April, 1867, enacted that in all such cases where lands have been, or

should thereafter be, sold for taxes and any person should have been in the actual occupancy or possession of such land for thirty days or more, within six months preceding the time when the deed shall be applied for, the deed shall not be issued unless a written notice shall have been served on the owner or occupant by the holder of the tax certificate at least three months prior thereto.   This notice must set forth a copy of the certificate, and state who is the holder and the time when the deed will be applied for. It appears that there was such occupancy, and that no notice was served; and the court held the tax deed void for want of it, overruling the objection of the plaintiff that the statute requiring notice was void as applied to her case, because it impaired the obligation of her contract, evidenced by the certificate of sale.   Mr. Justice Miller, after stating the facts, proceeds as follows:   "Did the statutory requirement that the holder of such certificate should give notice to whoever might be found in possession of the land before taking a deed, impair the obligation of the contract made at the tax sale?   .   .   .   That a statute is not void because it is retrospective has been repeatedly held by this court, and the feature of the act of 1867, which makes it applicable to certificates already issued for tax sales, does not of itself conflict with the Constitution of the United States.   Nor does every statute which affects the value of a contract impair its obligation.   It is one of the contingencies to which parties look now in making a large class of contracts, that they may be affected in many ways by State and national legislation.   For such legislation demanded by the public good, however it may retroact on contracts previously made, and enhance the cost and difficulty of performance, or diminish the value of such performance to the other party, there is no restraint in the Federal Constitution, so long as the obligation of performance remains in full force."

In the case of *Jackson* v. *Lamphire*, 3 Pet. 290, 7 L. Ed. 679, the Supreme Court said: "It is within the undisputed province of State legislatures to pass recording acts by which the elder grantee shall be postponed to a younger if the prior deed is not recorded within the limited time, and the power is the same, whether the deed is dated before or after the recording act. Though the effect of such a law is to render the prior deed fraudulent and void against a subsequent purchaser, it is not a law impairing the obligation of contracts. Such, too, is the power to pass acts of limitations, and their effect. Reason and sound policy have led to the general adoption of laws of both descriptions and their validity cannot be questioned."

In *Harrison* v. *Thomas*, 103 Va. 333, 334, 49 S. E. 485, the appellant, the former owner of two lots located in the city of Richmond, which were sold for taxes March 19, 1900, filed a bill in the Chancery Court of the city of Richmond against the appellee, the purchaser, to set aside the deeds to the property, executed April 7, 1902, on the ground that they were void because of the failure of the appellee to give the four months' notice of his purchase, prescribed by the amended statute. The act provides, as did the original section, that "after the expiration of the said two years, the purchaser of any real estate so sold and not redeemed . . . shall obtain from the clerk . . . a deed conveying the same." The amendment declares, "but in no case shall a deed be made to any such purchaser of any such real estate until after such purchaser has given to the person in whose name the real estate stands at the time of said sale . . . four months' notice of his said purchase"; and that "the person entitled to redeem said real estate shall have the right to redeem the same at any time before the expiration of four months, although such time extend beyond the two years first mentioned herein." The court was of the opinion "that the amendment in terms applies

only to persons entitled to redeem; and appellant was clearly not of that class, since her right to redeem had already ceased by lapse of time.   While it is true the statute comprises sales made before as well as those made after its passage, nevertheless, with respect to the former, it only includes those wherein the right to redeem was in force when the new law took effect.  If only the last day of the two years remained at that time, the right to the four months' notice accrued, although it would have the effect of extending the right of redemption beyond the original limit of two years.   But it was not the purpose of the legislature to revive a right of redemption already barred; if, indeed, it possessed the constitutional power to do so."

In Wood on Limitations (3rd ed.), p. 42, a discussion of the subject is concluded by the statement: "It is generally conceded that, as these statutes (statutes of limitation) are not treated as elements entering into the contract, the legislature may shorten or lengthen the period of limitation at any time before the bar has become complete."

If, therefore, we were dealing with a case of limitation by statute, we should deem the authorities already cited as conclusive upon the subject.   Is there any essential difference between a limitation imposed by statute, and that which is imposed in a stipulation entered into by the parties?   Undoubtedly the object and effect are the same, and the one as well as the other operates only upon the remedy. A contract entered into is presumed to be made with reference to existing laws, and yet it is well established that those laws may be altered, amended or repealed without affecting the binding force of the contract, so long as a sufficient remedy is left for its enforcement.

In *Green* v. *Biddle*, 8 Wheat. 1, 5 L. Ed. 547, it is said that, "The invalidity of a State law, as impairing the obligation of contracts, does not depend upon the extent of the change

which the law effects in the contract.    Any deviation from its terms, by postponing or accelerating the period of its performance, imposing conditions not expressed in the contract, or dispensing with the performance of those which are expressed, however minute or apparently immaterial in their effect upon the contract, impairs its obligation."

We cannot perceive that the alteration in the contractual limitation resulting from the statute under consideration affects the contract in any of the modes enumerated in the quotation we have made from *Green* v. *Biddle,* any more than would a statute identical in terms operating to enlarge or extend the period of limitation imposed by law.    It does not accelerate the period of its performance.    It imposes no condition not expressed in the contract; nor does it in any degree dispense with the performance of those conditions which are expressed.

In *Bronson* v. *Kinzie,* 1 How. 311, 11 L. Ed. 143, Chief Justice Taney delivering the opinion said: "It is difficult, perhaps, to draw a line that would be applicable in all cases between legitimate alterations of the remedy and provisions which, in the form of remedy, impair the right.    But it is manifest that the obligation of the contract, and the rights of a party under it, may, in effect, be destroyed by denying a remedy altogether; or may be seriously impaired by burdening the proceedings with new conditions and restrictions, so as to make the remedy hardly worth pursuing."

Contractual limitations differing from those provided by statute have been upheld in this State in the absence of any legislation upon the subject; but the statute under consideration arose out of the fact that the legislature did not consider a stipulation which limited the parties to less than one year within which to bring their action for a breach of the conditions of a policy of insurance as a reasonable one, and in the exercise of its power and the

discharge of its duty to promote, guard and protect the best interests of the citizens of the Commonwealth, it has seen fit to declare such contractual stipulations limiting the right of action upon a policy of insurance to a period less than one year as injurious to the rights of citizens and contrary to the policy of the Commonwealth. That act we are bound to uphold, unless it is found to be manifestly repugnant to the Constitution of the State or of the United States. To hold it unconstitutional we should have to find that while the terms only affected the remedy it materially impaired the rights and interests of the insurance company, and such is not the case, in our judgment.

We are, therefore, of opinion that the judgment of the circuit court should be reversed, and a new trial be had not in conflict with the views herein expressed.

*Reversed.*