**In re BOOTH'S DRUG STORE, Inc.**

District Court, W. D. Virginia.
April 23, 1937.

Carter & Williams and Tom Irvin Gill, all of Danville, Va., for petitioning creditors.

Crews & Clement, of Danville, Va., for objecting creditor.

PAUL, District Judge.

On January 19, 1937, certain creditors of Booth's Drug Store, Inc., filed a petition seeking to have it adjudicated a bankrupt. The act of bankruptcy alleged was a general assignment for the benefit of creditors executed by Booth's Drug Store, Inc., on December 28, 1936. The alleged bankrupt did not answer the petition, but another creditor, United Drug Company, Inc., filed an answer denying the right to an adjudication in bankruptcy on the ground that the charter of Booth's Drug Store, Inc., had been revoked and annulled as of May 31, 1935, and that it had no corporate existence when the petition in bankruptcy was filed against it.

It appears that Booth's Drug Store, Inc., was incorporated in 1925, and engaged in business as a retail drug store in Danville. On August 20, 1935, the State Corporation Commission issued a certificate reciting that certain corporations having failed to pay their annual registration fee and franchise tax for the years 1933 and 1934, the charters of said corporations were revoked and annulled as of May 31, 1935. Included among these was Booth's Drug Store, Inc., and the certificate showing the revocation of its charter was forwarded to the clerk of the corporation court of the city of Danville to be noted on the records where the charter was recorded. See Va.Code, § 3810a.

Despite this action of the Corporation Commission, the alleged bankrupt continued in business under its corporate name for considerably over a year, and when it made the assignment for the benefit of creditors in December, 1936, the assignment was executed in its corporate name. There is no suggestion that the period from August, 1935, to December, 1936, was being utilized to dissolve or to wind up its affairs. On the contrary, it apparently continued business as in previous years, and it is probable that none of the persons who dealt with it had any actual knowledge of the revocation of its charter. In fact, the corporation itself seems to have ignored it.

The debt of United Drug Company, Inc., is evidenced by a judgment obtained November 24, 1936, about a month before the assignment. The judgment is against the alleged bankrupt in its corporate name and was obtained on certain promissory notes executed by the corporation on February 15, 1935.

We have here the situation of a corporation whose charter, embodying the right to a corporate existence, had been formally revoked, but whose business was thereafter and without interruption continued under the corporate name and which continued to deal with creditors and customers as a corporation and otherwise to act in complete disregard of the revocation of its charter. The question is whether a

petition in bankruptcy may be entertained against the corporation for an act committed subsequent to the revocation of its charter.

■ The doctrine of the common law was that upon expiration of its charter, a corporation at once lost its identity and its powers; its life was instantly terminated. All debts due to or from it were extinguished, at least so far as any right of action thereon was concerned. Upon the dissolution of a corporation all of its rights and liabilities became extinct. Taylor on Corporations (5th Ed.) § 21; 1 Blackstone's Com.; Ang. and Ames on Corp. § 770. A corporation could not, after dissolution, either sue or be sued. And see First National Bank v. Colby (1874) 21 Wall. 609, 22 L. Ed. 687.

In the course of time, however, most of the states—probably all of them—have enacted statutes relating to the duties, powers, responsibilities and liabilities of corporations as affected by their dissolution or the forfeiture of their corporate existence. In the Virginia statute (Code of Va. § 3810), after directing the method of voluntary dissolution, it is provided: "All corporations, whether they expire by their own limitations or are otherwise dissolved, shall, nevertheless, be continued for such length of time, not exceeding three years, from such dissolution or expiration, as may be necessary for the purpose of prosecuting and defending suits by or against them, and enabling them gradually to settle and close their business, to dispose of and convey their property, and to divide their capital, but not for the purpose of continuing the business for which said corporation shall have been established. If the affairs of any such corporation shall not be wound up by its directors within three years from such dissolution or expiration, they shall be wound up in the manner provided by section thirty-eight hundred and thirteen."

■ Under the influence of the modern rule, there is abundant authority to the effect that the mere fact that a corporation has been dissolved, or has had its charter revoked under a state law, does not oust the jurisdiction of a court of bankruptcy previously obtained nor deprive a court of bankruptcy from taking jurisdiction after the dissolution. In re Double Star Brick Co. (D.C.) 210 F. 980; In re Storck Lumber Co. (D.C.) 114 F. 360; White Mountain Paper Co. v. Morse & Co. (C.C.A.) 127 F. 643, 645; In re Adams & Hoyt Co. (D.C.) 164 F. 489; Hammond et al. v. Lyon Realty Co. (C.C.A.) 59 F.(2d) 592; In re Thomas (C.C.A.) 78 F.(2d) 602.

Counsel for the objecting creditor, if I understand correctly, do not deny the soundness of the doctrines laid down in the above-cited cases; but they insist that in each of these' cases the act of bankruptcy upon which the bankruptcy proceeding was based was an act committed before the dissolution of the corporation and while it still had a formal corporate existence. It is contended that the situation is different where the charter had already been forfeited before the alleged act of bankrupty was committed. This contention appears to be based, not upon any clear distinction in principle, but solely upon the view that the charter having been revoked, the corporation could not thereafter commit an act of bankruptcy. Counsel sums his contention in these words: "Obviously a dead or incompetent individual could not commit an act of bankruptcy. Hence, by the same reasoning, how could a dissolved corporation be guilty of an act of bankruptcy." The presumed analogy between a dead individual and a dissolved corporation does not, in fact, exist. If it did, the objecting creditor could not have obtained its judgment and, contrary to the cases heretofore cited, no adjudication in bankruptcy could ever be had of a dissolved corporation. In the cases discussed and here also, the term "dissolved" is used as applying to the situation where, through revocation of its charter or otherwise, the right to a corporate existence has terminated and not in the broader sense which would indicate that its affairs had been completely wound up and all evidences of its life and activities had disappeared. This is also the use made in the statute.

The error is in assuming that, by revocation of the charter, the corporation instantly becomes dead and unable to function in any way. But the terms of the Virginia statute heretofore quoted deny such a view. It is provided that all corporations, following their dissolution, shall be continued for a limited period during which they may exercise numerous powers, including the prosecution and defense of suits and the conveyance of their property. As said in White Mountain Paper Co. v. Morse & Co., supra, " * * * a corporation does not immediately * ' * * cease to live, but retains for a specified period a qualified existence." The United Drug Company ob-

tained its judgment by virtue of this qualified existence.

The statute specifically grants to a dissolved corporation the power to convey and dispose of its property. For that purpose and to that extent it is still a living entity. The powers of the corporation are limited after its dissolution but if, acting within the limits of those powers, it commits an act of bankruptcy, there would seem no reason why it should be immune from the legal consequences of such act. If this corporation, prior to the order revoking its charter, had made an assignment for the benefit of its creditors, there could be no question of the right to have it adjudicated a bankrupt upon such act. After the revocation of the charter it still had the right to convey property, and if in the exercise of this unquestioned power it committed an act of bankruptcy it is, in my opinion, equally subject to adjudication. In either instance the act would be committed in the course of the exercise of powers which it had an unquestioned right to exercise at the time. And if it had the right and power to commit the act, there is no sound reason why it should be free of the consequences of the act. To hold otherwise would be to open a rather wide door to fraud and would bar the bankruptcy courts from taking jurisdiction in a class of cases which would rapidly increase if such bar was established. Corporations which were dissolved would, in winding up their affairs, be practically without restriction as to preferences to creditors, either by voluntary transfer of property or by legal proceedings.

In re Munger Vehicle Tire Co. (C.C.A.) 159 F. 901, 902, is directly in point here. In that case, as here, an involuntary petition in bankruptcy was filed against a corporation whose charter had been revoked for nonpayment of taxes several years before the commission of the act of bankruptcy. In sustaining the adjudication the court invoked the provisions of the New Jersey statute (2 Comp.St.N.J.1910, p. 1634, § 53) which is almost identical in language with the Virginia statute heretofore quoted. In the opinion of the District Court, it is said: "Upon the whole I have no doubt that under the statutes referred to * * * the Munger Company continued to be a species of body corporate, capable of being proceeded against and of certain forms of corporate activity. * * * As long as there is a legal entity, capable of owing money, and of collecting money, and of pay-

ing debts with that money, something exists capable of being adjudicated a bankrupt, if otherwise entitled. If a legal entity is capable of being adjudicated a bankrupt, it is necessarily capable of committing an act of bankruptcy."

I am of opinion that an adjudication should be made.