**UNITED STATES of America,**
**Appellant,**

v.

**VILLAGE CORPORATION, Pine Corporation, Chapel Corporation, and River Corporation, Appellees.**

**No. 8296.**

United States Court of Appeals
Fourth Circuit.

Argued April 7, 1961.

Decided Jan. 6, 1962.

Marvin S. Shapiro, Atty., Dept. of Justice, Washington, D. C. (Geo. S. Leonard, Acting Asst. Atty. Gen., Joseph S. Bambacus, U. S. Atty., Richmond, Va., and Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellant.

F. O. Blechman, Newport News, Va. (Jones, Blechman, Woltz & Kelly, Newport News, Va., on the brief), for appellees.

Before SOPER, HAYNSWORTH and BOREMAN, Circuit Judges.

HAYNSWORTH, Circuit Judge.

The District Court held that a Virginia statute permitting the institu-

tion at any time of suits against Virginia corporations in the process of liquidation did not apply to suits against corporations the charters of which had been revoked prior to the enactment of the statute. We think it does.

These consolidated actions were commenced by the United States against four Virginia corporations, which had constructed and operated housing projects, to recover substantial deficiencies remaining unpaid on the mortgage debts after foreclosure of the federally guaranteed mortgages. The charters of the four corporations had been revoked by Virginia on July 1, 1954 because of nonpayment of certain registration fees and franchise taxes. More than three years later, in April 1960, these actions were commenced against the corporations in their corporate names.[1]

After the revocation of these corporate charters in 1954 but prior to the commencement of these actions in 1960, Virginia completely revised her laws relating to business corporations. The Act of March 30, 1956,[2] which effectuated the revision, included a new Title 13.1 designed to replace entirely old Title 13 of the Code of Virginia 1950. For certain purposes, however, the Act provided for a period of transition, commencing January 1, 1957 and ending July 1, 1958, during which designated sections of old Title 13 would have continued, though limited, application.[3] The old statutes providing and defining the remedies of creditors of dissolved corporations were not among those continued in effect, for limited purposes, through the period of transition, and the repeal of old Title 13 was final and absolute as of July 1, 1958, the end of the transition period.

Nevertheless, the corporations contend that the right of the United States to maintain these actions against them is governed by the provisions of old Title 13 rather than those of new Title 13.1.[4] They point to the declaration of the General Assembly that the new Title 13.1 should apply to all "existing" corporations, and they deny their existence in 1956, some twenty-one months after their dissolution.

This contention can be better understood, perhaps, if we first note the relevant differences in the two sets of statutes and then consider the language of the Act of 1956 in which these defendants find comfort.

Under old Title 13, corporate existence was continued after dissolution, for the purposes of liquidation, for a period of three years, and during that period actions could be instituted by or against it in its corporate name.[5] Dissolution did not abate pending actions.[6] The directors, as trustees, were required to proceed with the liquidation of the corporation.[7] Upon application of a creditor or stockholder, an appropriate court of Virginia was authorized to continue the authority of the directors as trustees or to appoint a receiver, the trustees or the receiver being authorized, in the name of the corporation, to defend the suit brought by the applying creditor or stockholder.[8]

---

1. It does not appear on this record when the corporations ceased the active conduct of their businesses or when payments of principal and interest on the mortgage debts came into default.

2. Acts of 1956, ch. 428, pages 487–602.

3. In World Carriers, Incorporated v. Bright, 4 Cir., 276 F.2d 857, we were concerned with a problem which arose during the transition period where the relevant sections of the old laws had been continued in effect for application in specified situations.

4. Whether these Virginia corporations may be sued, as such, after revocation of their charters must be determined by reference to Virginia's laws. Federal Rules of Civil Procedure, Rule 17(b), 28 U.S.C.A.

5. Title 13, § 70.

6. Title 13, § 71.

7. Title 13, § 72.

8. Title 13, § 73. The District Court was of the opinion that the United States could now proceed under this section since the Act of 1956 provided that its enactment would not impair existing rights of creditors. Title 13.1, § 130.

For this somewhat cumbersome procedure, new Title 13.1 substituted a simplified remedy. It authorized actions by or against the corporation, and in its corporate name, after dissolution without a limitation of time.[9] Under the new statute, passage of time after the date of dissolution is without significance.[10] A court order continuing the authority of directors or appointing a receiver is no longer a prerequisite to the institution of an action against a corporation in dissolution at any time.

The defendants concede there is no constitutional question. They do not deny that Virginia had the power, which she could exercise constitutionally, to make the new remedy applicable to actions against them.[11] When the new statutes were enacted, less than three years after the revocation of their charters, these causes of action had not been extinguished or abated. They were then enforceable by actions against the corporations in their corporate names. When Virginia revoked their charters for nonpayment of fees and taxes, she did not confer upon them or their directors any vested immunity to suit, effective three years thereafter, or relinquish her right to simplify the remedies she provided and to facilitate, without impairment, the enforcement of existing causes of action.

Instead they resort to a narrow construction of the language of § 13.1–128, the provisions of which relate primarily to the transition from the old statutes to the new,[12] in which the General Assembly declared the new Act applicable to all "existing" corporations and its provisions "a part of the charter of every corporation heretofore or hereafter organized in this State." They read into the words, "existing," and, "organized," an intention to limit application of the Act to those corporations which, on its effective date, had an unqualified existence and were lawfully authorized to do business in Virginia. They bolster their interpretation by reference to the subsequent provision of the section which requires "each such corporation" to establish a registered office, appoint a registered agent and file a statement with the Commission containing prescribed information. They point also to the penalty of charter revocation if the requisite statement is not filed by July 1, 1959. "Such corporations," they say, refers to those existing corporations to which the section makes the Act applicable, and it is inconceivable to them that the General Assembly could have intended to require a corporation, the charter of which had been revoked, to establish a registered office, appoint a registered agent or file a new statement. They say it would be senseless to require the revocation of the charter of a corporation for failure to file a statement when its charter had been revoked earlier for other reason.[13]

If some of the provisions of § 13.1–128 be wholly or partially inapplicable to these corporations, however, it does not follow that they were not "existing" corporations within the meaning of the Act. They had, at least, a qualified existence.[14]

9. Title 13.1, § 101.

10. Of course, general statutes of limitation referable to the accrual of the cause of action remain applicable.

11. See Home Building & Loan Ass'n. v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413.

12. See World Carriers, Incorporated v. Bright, 4 Cir., 276 F.2d 857.

13. This may not be as senseless as they suppose. Under § 13.1–92, a corporate charter, revoked for nonpayment of annual fees and franchise taxes, may be re-instated upon payment of the fees, taxes and penalties and a reinstatement fee of $100. If the statement required by § 13.1–128 had not been filed, however, that section would operate to prevent reinstatement upon compliance only with the requirements of § 13.1–92.

14. In Melrose Distillers, Inc. v. United States, 359 U.S. 271, 79 S.Ct. 763, 3 L. Ed.2d 800, the Supreme Court held that Maryland and Delaware corporations, after voluntary dissolution, were not so dead that they were not "existing" within the meaning of § 8 of the Sherman Act, 15 U.S.C.A. § 7. In Shull v. Com-

They had the power to remove the qualification and regain their authority to continue the conduct of their businesses upon payment of the fees and taxes in compliance with § 13.1–92. They had the capacity to achieve their complete rejuvenation without any new grant from the state. Until they paid their fees and taxes, they were limited in what they could lawfully do, but they had a *de jure* existence for the purpose of winding up their affairs and a *de facto* existence for all other purposes for which they were actually utilized.

It is particularly significant that in § 13.1–128 the General Assembly was careful to provide for continuance, during the transition period, of certain sections of the old statutes. That it made no such provision for §§ 13–70 to 13–73 strongly indicates that it intended those sections, upon the effective date of the Act, to be replaced entirely and for all purposes by the new § 13.1–101.

The Virginia Code Commission, which prepared and recommended the new statutes which, in essential part became Title 13.1 included in its report[15] a note to § 13.1–128:

> "Comment: Although the greater part of this section is of temporary interest as providing only for transition from former law to the Act, a further purpose is to make clear that the Act is applicable in full to all corporations incorporated in Virginia or now qualified to do business in Virginia. This application is complete, to the fullest extent of the reserved legislative power, without regard to the particular factual situation of any corporation and without

limitation of any provision of the Act; cf. Winfree v. Riverside Cotton Mills, 113 Va. 717 [75 S.E. 309] (1912), where, as in a number of earlier cases, the broad applicability of the reserved power is stated.

> "It is important in the public interest that the same rules apply to present corporations and securities as to new ones and thus that the Act apply in full force to corporations existing and securities outstanding at its effective date. In view of the broad scope of the reserved power to amend in Virginia (particularly where the public interest is concerned, cf. A. P. Smith Mfg. Co. v. Barlow [13 N.J. 145], 98 A.2d 581, N.J.1953, app. dism. 346 U.S. 861 [74 S.Ct. 107, 98 L.Ed. 373], 1953) this is within the power of the General Assembly. McNulty v. W. & J. Sloane [184 Misc. 835], 54 N.Y.S.2d 253 (S.Ct.1945); Liebschutz v. Schaffer Stores Co. [276 App.Div. 1], 93 N.Y.S.2d 125 (S.Ct.1949) aff. [279 App.Div. 96] 108 N.Y.S.2d 476 (App.Div.1951.)"

The simplification of procedures and the complete reversal of the common law rule of abatement of actions upon dissolution are remedial measures entitled to a liberal construction to effectuate their purposes.[16]

We conclude, in the language of the Code Commission, that the intent of § 13.1–128 was to make the application of the new statutes "complete to the fullest extent of the reserved legislative power, without regard to the particular factual situation of any corporation and without limitation of any provision of the Act." [17]

---

missioner, 4 Cir., 291 F.2d 680, we held a Virginia corporation, after voluntary dissolution, was not alive in its former sense, but that it had a continuing existence for the purposes of liquidation. See In re Booth's Drug Store, Inc., D.C., W.D.,Va., 19 F.Supp. 95.

15. House Document No. 5, 1956 Session, General Assembly of Virginia. Resort to this report, if construction of the statutes be doubtful, is expressly authorized by § 13.1–132.

16. Eastman, Gardiner & Co. v. Warren, 5 Cir., 109 F.2d 193; Helvering v. South Penn Oil Co., 62 App.D.C. 373, 68 F.2d 420.

17. The defendants place a different interpretation upon the Comment of the Code Commission. They find in the references to "present corporations and securities" and to "corporations existing and securities outstanding" an indication the Commission intended the Act to apply only to corporations authorized to conduct their

These corporations were "existing" within the meaning of § 13.1–128, as we construe it.

One would not expect this question in its particularized context to have arisen frequently. We find nothing in the decisions of Virginia's Supreme Court bearing on the question. A very similar question did arise in Illinois. In Walden Home Builders, Inc. v. Schmit,[18] the defendant objected that the plaintiff was without capacity to maintain the action. At the time of the plaintiff's dissolution, Illinois had no statute authorizing dissolved corporations to institute such actions. Corporate assets could be recovered only in proceedings in equity at the instance of creditors or stockholders. After the plaintiff's dissolution, however, a statute was enacted authorizing dissolved corporations to bring actions in their corporate names. The court held that the statute created no new rights, but provided a new, simpified remedy. It thought the plaintiff's debtors had no vested right to the old remedy and it held the action was maintainable under the statute.[19]

Finally, defendants contend this construction gives the statute a retroactive effect, and the General Assembly did not employ words it customarily uses when it intends that effect. We find no retroactivity in this application of the statute, however. It altered no substantive right. It only altered the procedure by which substantive rights may be judicially enforced. "A statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends * * * are drawn from a time antecedent to the enactment." Reynolds v. United States, 292 U.S. 443, 449, 54 S.Ct. 800, 803, 78 L.Ed. 1353. See, also, United States v. Jacobs, 306 U.S. 363, 367, 59 S.Ct. 551, 83 L.Ed. 763; Walden Home Builders,

Inc. v. Schmit, 326 Ill.App. 386, 62 N.E. 2d 11.

The judgment of dismissal will be reversed and the consolidated cases remanded for further proceedings.

Reversed and remanded.

---

businesses. They only beg the question. After its charter is revoked, a corporation has securities outstanding until its liquidation is completed.

18. 326 Ill.App. 386, 62 N.E.2d 11.

19. See, also, American Transp. Co. v. Swift & Co., 2 Cir., 24 F.2d 310, reversing the decision of the District Court reported in 22 F.2d 457.