**James Lile HUPMAN, Appellant,**

v.

**Harold C. COOK and Cook and Robinson, Incorporated, Appellees.**

No. 80–1236.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1980.

Decided Jan. 23, 1981.

John C. Singleton, J. Gregory Mooney, Covington, Va. (Collins & Singleton, Covington, Va., on brief) for appellant.

Ronald M. Ayers, Roanoke, Va. (H. Allen Glover, Jr., Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., on brief) for appellees.

Before BRYAN, Senior Circuit Judge, HALL and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Holding the claim to be time-barred, the district court granted summary judgment to the defendants. On appeal, plaintiff urges that the action was instituted well within the applicable period of limitations.

The diversity action, controlled by Virginia law, grew out of an injury which occurred on August 23, 1977. Suit was filed on November 30, 1978. The action sought to hold the defendants liable, as the installers, in July, 1968, of machinery and equipment alleged to have occasioned the injury. If limitations are calculated from the date of installation, the action is time-barred; if limitations run from the date of injury, it is not.

In 1964, the Virginia legislature enacted a statute imposing a time limit for institution of an action against "any person performing or furnishing the design, planning, supervision of construction or construction" of an "improvement to real property."[1] Following five years accounting from completion of the installation, no suit might be commenced for injuries occasioned by the installed equipment or machinery. For a time, it was questioned whether the statute encompassed fixtures comprised of equipment or machinery within the term "improvement to real property." That they were covered was the holding in *Wiggins v. Proctor & Schwartz, Inc.*, 330 F.Supp. 350 (E.D.Va.1971), *affirmed* in an unpublished opinion on the memorandum of the district judge, 71–1952 (4th Cir., March 8, 1972).[2]

The *Wiggins* case caused a stir. The Virginia legislature, to alter the consequences of that holding, with little delay adopted an emergency measure, effective immediately on March 13, 1973, the date of enactment. It added to the 1964 statute language which abrogated the five year limitations period, accounting from the date installation was completed, for the manufacturer or supplier of any equipment or machinery.[3]

The 1964 statute did "not constitute a statute of limitations in the strict sense," but rather set an outside limit beyond which an action might not be maintained. *Federal Reserve Bank of Richmond v. Wright*, 392 F.Supp. 1126, 1129 (E.D.Va. 1975); *Comptroller of Virginia, ex rel Virginia Military Institute v. King*, 217 Va. 751, 232 S.E.2d 895 (1977). As those cases make clear, any defendant covered by the statute might escape suit, even though

---

1. Code of Virginia § 8–24.2 (recodified as § 8.01–250):

   No action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of said injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction. . . .

   An amendment in 1968, adding, "surveying" between "planning" and "supervision of construction," Chapter 103 of the Virginia Acts of 1968, p. 150, plays no part in resolution of the issue before us.

2. *See also Adams v. Carrier Corp.*, in the Law and Equity Court of the City of Richmond, Opinion of April 10, 1973, *affirmed* by order of the Supreme Court of Virginia dated 3/15/74, 214 Va. XIiii (1974); *Smith v. Allen-Bradley Co.*, 371 F.Supp. 698 (W.D.Va.1974). Appellant makes no contrary contention in the present appeal.

3. 1973 Va. Acts, c. 247 (amending Va.Code § 8–24.2 (now codified at Va.Code § 8.01–250)) states:

   This limitation shall not apply to the manufacturer or supplier of any equipment or machinery or any other articles which are installed in or become a part of any real property either as an improvement or otherwise.

§ 8–24.2 had not run, if the time under another statute, say one as to limitations in a negligence action, had expired. Conversely, he could also successfully plead limitations if the five years under § 8–24.2 had run, even though a statute setting the applicable limitations period for an action for negligence still permitted suit to be brought. The 1973 amendment of partial repealer was in no way applicable to the *Federal Reserve Bank* and *Comptroller of Virginia* cases, since they concerned architects, not installers of equipment to whom the 1973 amendment was directed. As to installers of machinery and equipment, the 1973 amendment did away with one aspect of the dual protection, leaving other applicable limitations statutes unaffected, however.[4]

Hence we are presented with the question whether the 1964 statute, setting a five year limitations period, but repealed prior to the running in this case of the full five years, continued to have force and effect, to such an extent that, in July, 1973, when the five year period matured, the action was barred. Or did the repeal of the statute on March 13, 1973 render it of no significance thereafter insofar as a supplier or installer of equipment was concerned as to whom the five years had not yet completely run?

■ The 1973 act is silent as to the treatment of cases straddling the temporal line represented by the date March 13, 1973. Obviously, as to any installation only completed after that date, any injury, of necessity, would also occur after that date, and the amended statute would be fully applicable. Perhaps not so obvious, but for reasons of constitutional doctrine concerning vested rights, it is also established that for any installation already more than five years old on March 13, 1973, no action could be instituted for an injury taking place after March 13, 1973. *E. g. Kesterson v.*

*Hill*, 101 Va. 739, 45 S.E. 288, 289 (1903) ("... the right to set up the bar of a statute of limitations as a defense to a cause of action after the statute has run is a vested right, and cannot be taken away by legislation, ..."); *Link v. Receivers of Seaboard Air Line Ry.*, 73 F.2d 149, 152 (4th Cir. 1934) ("... where a right of recovery has been lost by reason of failure to institute action within a period limited as a condition of the right, it is not revived by a statute subsequently enacted extending the period."). The limitations period would already have run before the new statute was passed.

But there remains to be dealt with the intermediate situation where the installation had been completed prior to March 13, 1973, yet was less than five years old when the amendment was passed providing that thereafter limitations were to be calculated solely with reference to the date of injury, and no longer from the date of installation. It is just such a case as now confronts us.

In such circumstances of pre–1973 installations, does the old law, although repealed, continue in effect from March 13, 1973 to July, 1973, so that, in July 1973, defendants' right to freedom from suit matured and fully vested? Or did the newly mandated computation method apply so that the plaintiff might timely sue, when the injury occurred on August 23, 1977? It is to be noted that, under the former alternative, the plaintiff never would have had a cause of action against the defendants, for it would have been fully time-barred long before any injury occurred.

First it should be emphasized that a resolution of the question involves no issues of constitutional dimensions. There were no vested rights in the defendants entitling them to repose from any initiation of litigation when the amendment was enacted on March 13, 1973.[5] The legislature could have

---

**4.** The other applicable enactment, the true limitations statute, had manifestly not run here, where suit was filed less than one year and four months after the injury. The general statute pertaining to actions for personal injuries mandates that a case "shall be brought within

two years next after the cause of action shall have accrued." Code of Virginia § 8.01–243.

**5.** *See Armstrong v. Erasmo*, Va., 263 S.E.2d 655, 659–60 (Va.1980) ("... it is apparent that ... the General Assembly sought to eliminate from the operation of the Act ... causes of

left the five year limitations period in effect for installations less than five years old, could have extended the time to six or more years, or could have abolished the repose created by lapse of time after installation entirely. The question is simply: What did the legislature do?

There is no doubt that a statute setting a fixed time from the occurrence of a certain event within which suit must be brought frequently will be construed as ending the right, not merely the remedy, when the fixed time has elapsed. We assume that the statute with which we deal here, measuring limitations as five years from completion of installation, was a substantive statute, abolishing the right, not just the remedy, when enacted in 1964.[6]

We are dealing, however, with the situation where, though the statute was substantive, nevertheless, the fixed time had only started to run but had not fully elapsed when it was repealed. The amending power of the legislature, therefore, still allowed it to lengthen the period, or to eliminate it altogether. The question for us still, therefore, comes down to whether, as a matter of

intention, the Virginia legislature in 1973 meant to allow installers of equipment who had not yet experienced five years since completion—who were still in passage—to continue to operate under the old limitations system or, instead, to be subject to the new. "Adjudication of the issue presented involves, as plaintiffs argue, mainly a question of statutory interpretation and not, as defendants contend, just the questions whether the statute of limitations ran and whether vested rights were established." *Armstrong v. Erasmo*, Va., 263 S.E.2d 655, 658 (Va.1980).

█ In answering the question, the defendants start with the advantage of authority in their favor. In *Anderson v. Hercules, Inc.*, 76–0111–R, et al. (W.D.Va. August 24, 1977), *affirmed in an unpublished opinion*, 77–2418 (4th Cir. August 21, 1978), the district court and this court both ruled that, even after the 1973 amendment, for pre–1973 installations not yet fully five years old, the flat five year limitations period, calculated from time of installation, continued to apply. However, the defendants'

action, not time-barred, which arose prior to the effective date of the Act.... Because under our view of the cases the statute of limitations did not run on either claim, we do not reach for decision the question whether the 1978 Curative Paragraph was void because acquired rights may have been divested retroactively.").

The Virginia 1964 statute was one of a spate of similar enactments in approximately 30 states. *See, e. g., Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (1972) (construing N.J.Stat.Ann. 2A:14–1.1); *Watts v. Putnam County*, 525 S.W.2d 488 (Tenn.1975) (construing Tenn.Code Ann. § 28–314 *et seq.* ). For a survey of the statutes, *see* Comment, *Limitation of Action Statutes—For Architects and Builders—Blueprints for Non-action*, 18 *Cath.L. Rev.* 361 (1969). Ours is the only case we have been able to locate involving a repeal, in whole or in part, of the statute, before the insulating period (in our case, 5 years) had elapsed. What the cases say about the application of the statutory equivalents of the Virginia 1964 statute can, consequently, throw little light on the significance to be accorded the Virginia 1973 repealer.

Yet in *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 199–200, 293 A.2d 662, 667 (1972), although applying a ten-year statute to the benefit of an installer, where the ten years had

fully run, the court was careful to point out that: "The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed." The language clearly intends to convey that, for an installation less than ten years old, the Legislature could amend the statute in such a way as to eliminate any protection based on the expiration of time from the date of installation. A vested right would arise only on the running of the ten years, *while the statute remained in force*.

6. The district judge so opined, without citation of authority. If the statute were merely procedural and not substantive it would be an easy decision that the 1973 General Assembly intended to render the 1964 statute entirely inapplicable for any installation completed before March 13, 1973, at least those installations not yet five years old. *See Bain v. Boykin*, 180 Va. 259, 264, 23 S.E.2d 127, 129 (1942) ("It was an inchoate right which would become vested ... by the expiration of the period allowed at the time in which to take an appeal."); *Fletcher v. Tarasidis*, 219 Va. 658, 661, 250 S.E.2d 739, 740 (Va.1979) ("Litigants hold no vested rights in procedural statutes ...."); *Phipps v. Sutherland*, 201 Va. 448, 111 S.E.2d 422 (1959).

advantage is not fully dispositive, for neither the district court opinion nor the opinion of this court was published. Consequently, they are entitled only to the weight they generate by the persuasiveness of their reasoning.[7] To decline to follow *Anderson* would not constitute the overruling of prior circuit authority especially where, as here, the presentation of the case to the court was defective on a crucial matter.[8]

In this connection, it is pertinent to observe that the Fourth Circuit *per curiam* affirmance was "for the reasons stated by the District Judge in his Memorandum and Opinion Order." Hence it is to the district court opinion that we must turn to ascertain to what extent the *Anderson* case lights the way for us.

First we must indulge an aside about the unsatisfactory practice of applying label logic. The district court, in the *Anderson* case, started out with an acknowledgment by plaintiff that, to win, he would have to obtain "retroactive" application of the 1973 amendment. We all properly feel disinclined to apply legislation retroactively in the absence of explicit statutory language. The availability—the conceded applicability—of the label as the case was argued to the court minimized the attention paid by the district judge as to (1) what actually was and what was not retroactive, and (2)

what kinds of looking back do, and what kinds do not, appeal to mankind's collective sense that it would be unfair to apply an enactment to events viewed as antedating its passage.[9]

One aspect of the entire amalgam of facts did antedate 1973, i. e. the installation in 1968. However, if the results in such cases were to be obtained purely on verbal logic, rather than on a reasoned approach to what is truly involved, the plaintiff would have the better of the argument for he could say that his approach is not retroactive in any way. He wants to look only at the 1977 injury, long after the 1973 amendment and solely to the law then and thereafter in force. The defendants, he could urge, are the only parties wanting to go retroactively back before 1973 to the installation in 1968. Neither such a retroactivity argument by plaintiff, nor the contrary retroactivity argument by defendants, has much to commend it and we rely on neither in deciding the case.

Hence, *Anderson*, relying as it does on a label, is lacking in persuasive authority. That, standing alone, does not mean, of course, that it is wrongly decided—only that we must look elsewhere than to the case itself to achieve resolution.

Defendants offer as indications supportive of their interpretation:

---

**7.** They do not constitute binding precedents. *King v. Blankenship*, 636 F.2d 70, at 72 (4th Cir. 1980). Only in unusual circumstances will the court cite an unpublished opinion. *Rules of the United States Court of Appeals for the Fourth Circuit*, 18(d)(i). Citation by counsel is disfavored. *Id.* 18(d)(i). An unpublished opinion may be cited for what precedential value it may have. *Id.* 18(d)(iii).

**8.** In *Anderson* the district judge said:

Plaintiffs' response to defendants' motion is essentially two fold. They first argue that the 1973 amendment to Section 8–24.2 should be applied retroactively in this case.

The judge went on:

As to plaintiff's contention that the 1973 amendment to the statute should be applied retroactively, it has already been decided in this district that the amendment is to be given prospective application only.

The value of *Anderson*, consequently, is restricted at most to the situation where, because of counsel's ill-advised concession, retroactivity

is simply deemed established, with no inquiry as to whether that is in fact the case. Counsel for the plaintiff in the present case has emphatically refused to make such a concession. As we shall show, it is a mistake to regard the application as retroactive.

**9.** Looking realistically at what the court in *Anderson* did, it allowed application of the adjective "retroactive" to a contention, in and of itself, to persuade the court that the argument was of little merit. Retroactivity, as so applied, amounts to no more than language to announce a result. It fails to supply a description of any characteristics which might lead to the conclusion that the legislature did not intend the 1973 repealing amendment to apply to installations already completed, but not yet five years of age at the time of the amendment. Hence the opinion lacks reasoning, amounting, rather, to dictate.

1) The repealing act is silent on the subject. It does not state that it should apply to installations completed before March 13, 1973, but less than five years old.

2) The act was declared an emergency piece of legislation, effective immediately. Thus the situation was one in which, through foreshortening of time, a need for retroactivity was lessened. Concentration on immediacy emphasizes the present, and implicitly negatives the past insofar as application is concerned.

The first of the arguments essentially begs the question. The silence of the statute affords as much or as little support for the proposition that the legislature meant to withdraw the protection of the five year limitation for completed installations less than five years old as it does for the contrary proposition which the defendants prefer.[10] A decision in plaintiff's favor would not be "retroactive," for the thrust of the amending statute *as to all injuries after March 13, 1973 and as to whether the five years continued to run after March 13, 1973,* would be entirely prospective.

As for the second argument, it seems to stand emergency legislation on its head. The purpose of emergency legislation is to effect the change as soon as possible, so that as few situations as may be will derive the benefit of the old law which the legislature wants to change or repeal. By making the amendment effective immediately, the legislature indicated that it did not approve the result in *Wiggins* and wanted to reduce the extent of its application as much as

possible.[11] The emergency nature of the 1973 act, therefore, to the extent it is significant at all, favors a conclusion advantageous to the plaintiff, not the result sought by defendants.[12]

■ With those arguments out of the way, it is well to remember that, in this diversity action, the expressions of the Virginia courts are due great deference. If we can discover the answer they would give to the question, it must control, regardless of our personal predilections for a contrary concept. Plaintiff suggests that the line the Virginia courts would take is indicated by a case construing Virginia law relating to a statutory extension of the twilight existence following the operational death of a corporation. *United States v. Village Corp.*, 298 F.2d 816 (4th Cir. 1962) (applying Virginia law).

*Village Corp.* concerned a situation in which the rights of creditors to recover directly from a dissolved corporation by statute had previously lasted three years. However, an amendment had been adopted removing the period of limitations altogether. A corporation, which had been dissolved for a period of less than three years when the statutory amendment was adopted, was not proceeded against until more than three years after the dissolution. It claimed the benefits of the three year statute. The court ruled, however, that the extension of the time in which suit could be brought applied not only to corporations dissolved after the amendment of the statute but also to corporations dissolved before the amendment, if the dissolution was less than three years old.

---

**10.** The 1973 statutory language "[t]his limitation shall not apply to the manufacturer or supplier of *any* equipment ..." (Emphasis supplied.) is a contrary slender reed of about equal significance or insignificance. *See Smith & Marsh v. Northern Neck Mutual Fire Ass'n*, 112 Va. 192, 195, 70 S.E. 482, 483 (1911):

The words 'any action' necessarily include suits instituted before as well as after the passage of the Act.

**11.** The 1964 statute, in the view of the General Assembly "was never intended to cover or apply to manufacturers or suppliers of any equipment, machinery or articles whether or not they become an improvement to real property."

*Smith v. Allen-Bradley Co.*, 371 F.Supp. 698, 701 n.4 (W.D.Va.1974).

**12.** In a similar context, an argument like unto defendants' as to the effect of the statute's having been "emergency legislation" was repudiated. *Fletcher v. Tarasidis*, 219 Va. 658, 661, 250 S.E.2d 739, 740 (Va.1979) ("But this sentence is merely the legislative device contemplated by Art. IV. § 13, Constitution of Virginia and Code § 1–12 to advance the date the emergency measure is to become operative. Whether the statute was intended to have retrospective effect is a question governed by the rules of statutory construction.")

Such a case, however, is no more than mildly persuasive, for it concerns circumstances quite distinct from those with which we are concerned.[13] It confirms the point that retroactivity is not involved in a case like the present one. "We find no retroactivity in this application of the statute, however.... 'A statute is not rendered retroactive merely because the facts or requisites upon which its subsequent action depends * * * are drawn from a time antecedent to the enactment.'" *United States v. Village Corp., supra* at 820.

Nevertheless, it is of little help as to what was the actual legislative intent as to whether pre-March 13, 1973 installers whose installations were not five years old on March 13, 1973 could avail themselves of the five year limitations period, once it had subsequently elapsed. *Village Corp.* does not suggest that its result reflects a broad principle, generally applicable in all limitations cases. On the contrary, each situation must be examined on its individual merits.

Defendants also cite cases expressing the proposition that retroactivity is not favored. They are readily distinguishable. A principal ground for distinction is the consideration that, in those cases, at the time of an amendment in the duration of the statutory limitations period, the cause of action had already accrued; there was necessarily someone in existence presently able to sue.

The courts understandably have not liked to see the period in which the plaintiff might recover shortened by statute, unless a reasonable time was provided in the statute which would permit the holder of the accrued claim to sue.[14]

On the other hand, obviously, anyone for whom the statute of limitations was one year when the cause of action arose has a poor claim to come under a subsequent amendment extending the limitations period to two years. He was in a position to protect himself by suing within the year.[15] If the limitations were two years when the cause of action arose, a statute shortening the period to one year would have to create a grace period after enactment to give anyone whose cause of action was less than two but over one year old a reasonable opportunity to protect himself by promptly initiating a cause of action.[16]

In all events, those cases all concern the situation where a statutory amendment impinges on actions which have already accrued. Those cases have no applicability to the present case. When § 8–24.2 was amended in 1973, persons who had not yet suffered injury from a defect in the installation of equipment could not do anything to perfect their claims. Plaintiff perforce had to wait until August 23, 1977, when the injury occurred before he had any basis for suit.

13. The differences between the extent of liability of a defunct corporation for corporate debts, on the one hand, and tort liability for a continuing individual or enterprise, on the other, are substantial.

14. *See Allen v. Motley Construction Co.*, 160 Va. 875, 882, 170 S.E. 412, 415 (Va.1933), which held applicable to cases antedating a new statute a one year limitations period in a situation where theretofore there had been no statute of limitations. The court relied on "the constitutional provision, placing the effective date of a statute ninety days from the day of adjournment of the session of the General Assembly ... to allow litigants a fair opportunity to acquaint themselves with the provisions of the statute enacted at a given session in order to institute and prosecute the appropriate proceeding for the preservation of their rights...."

*See also Phipps v. Sutherland*, 201 Va. 448, 453, 111 S.E.2d 422, 426 (1959) (It is within the power of the legislature to amend a statute of limitations giving a shorter period of time for the bringing of actions than existed before, even as to actions which have accrued, provided it does not take away the right to sue, and a reasonable time is given for the bringing of such actions.); *Smith & Marsh v. Northern Neck Mutual Fire Ass'n*, 112 Va. 192, 70 S.E. 482 (1911).

15. *Barksdale v. H. O. Engen, Inc.*, 218 Va. 496, 237 S.E.2d 794 (Va.1977).

16. In *Ferguson v. Ferguson*, 169 Va. 77, 192 S.E. 744 (Va.1937), the absence of such a reasonable opportunity to protect one's claim led to the conclusion that the new one year statute did not replace the old two year statute as to cases already accrued on enactment of the new statute. "The amendment simply changed the time of the limitation from two years to one year." *Id.* at 169 Va. 84–85, 192 S.E. at 776.

In essence, therefore, we are presented with an open question as to the Virginia legislature's intention in 1973, with no dispositive or even especially indicative, Virginia judicial authority. However, we are not bereft of guidance. The legislature of the Virginia Commonwealth has spoken unambiguously to establish its intention to eliminate altogether the benefit of the five-year limitation accounting from date of installation in those cases in which the five years had not yet expired. With so clear an indication of legislative will, we are satisfied that the Virginia courts would see that it was given effect.

In a Report of the Virginia House of Delegates Committee for Courts of Justice, dated February 5, 1973, signed by sixteen of its members, the Committee's view was expressed that *Wiggins* was decided erroneously and that the benefit of the five year statute "was *never* intended to cover" (Emphasis added.) manufacturers or suppliers of equipment or machinery. *Smith v. Allen-Bradley Co.*, 371 F.Supp. 698, 701 n.4 (W.D. Va.1974). The General Assembly thus evinced an intent in 1973 to eradicate every vestige of § 8–24.2, as fully as it constitutionally could, insofar as installers of machinery and equipment were concerned.

In *Smith v. Allen-Bradley Co., supra,* and *Adams v. Carrier Corp., supra,* concerned with whether the statutory reach in 1964 indeed extended to suppliers of machinery and equipment, the 1973 legislative history could not overcome retrospectively the unambiguous language enacted in 1964 to the effect that suppliers of machinery and equipment were covered. The General Assembly used language plainly compelling the result in *Wiggins,* despite any unexpressed intention to the contrary. "If Parliament does not mean what it says it must say so." [17] To reverse, back to the beginning in 1964, what was actually enacted, because the General Assembly meant to write—but did not write—something else, would affect vested rights in those for whom the five years had already run. That would constitute a true case of impermissible retroactive application.

In our case, however, we deal with the 1973 legislative intent for the future only: Would an unmatured portion (where the installation was less than five years old) of the insulation period under the 1964 statute be tacked on, post-March 13, 1973, to make up five years, or would the inchoate right simply be wiped out, to have no further significance for the future, i. e., after March 13, 1973? As to that, the legislature spoke plainly. It favored wipe-out. Its pronouncement must be given effect.

The case, consequently, was not time-barred. Summary judgment was erroneously entered and must be reversed. The case is remanded to the district court for further proceedings.

*REVERSED.*

---

**17.** Lord Mildew in *Bluff v. Father Gray,* as cited by A. P. Herbert in *The Uncommon Law,* 7th ed., 1950, at p. 313.